IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:18-CV-1729 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| HUNTER'S MANUFACTURING | ) | MAGISTRATE JUDGE GEORGE J. |
| COMPANY, INC. d/b/a TENPOINT | ) | LIMBERT |
| CROSSBOW TECHNOLOGIES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
TO STAY DISCOVERY AND RULE 26 CONFERENCE**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................ iv

**STATEMENT OF ISSUES** ............................................................................... vii

**SUMMARY OF ARGUMENT** ......................................................................... viii

I.     **INTRODUCTION** ............................................................................................1

II.    **BACKGROUND** ..............................................................................................1

    A.    Patent License Agreement .................................................................1

    B.    Lawsuit .................................................................................................2

III.   **RAVIN'S MOTION TO DISMISS SHOULD BE DENIED.** .......................3

    A.    **Legal Standard for Motion to Dismiss** .................................................3

    B.    **Extrinsic Evidence May Be Received in Construing the Agreement.** ...............4

    C.    **Ravin's** ██████████████████████████████
██████████████████ ................................................5

        1.    The Agreement's Negotiation Supports TenPoint. .....................7

        2.    The Agreement's Performance Supports TenPoint. ...................9

    D.    **Ravin Failed to Develop Its Argument that Royalty Reports Need Not Be Provided** ████████████████. ...............12

    E.    **Ravin's** ████ **Check Did Not Properly Pay the Royalties for the First Quarter of 2018.** .................................................12

        1.    Ravin Unequivocally Stated That ███████████████
██████████████████. ..............12

        2.    Ravin's Subsequent Shifting Positions Hurt Its Credibility. .....................13

        3.    Ravin's Shifting Positions Are Ineffective Under Contract Law. .............15

        4.    Ravin's Actions Prohibited TenPoint from Crediting the Check Toward the First-Quarter-2018 Royalties. .........................16

ii

**IV.**   **RAVIN'S MOTION TO STAY DISCOVERY AND THE RULE 26(f)**
          **CONFERENCE SHOULD ALSO BE DENIED.**.........................................................16

   **A.**   **Applicable Law**.........................................................................................16

   **B.**   **Per the Fed. R. Civ. P., Discovery Should Have Already Commenced.**...........18

   **C.**   **Ravin Has Not Established Good Cause for Delaying Discovery.**...................18

**V.**   **CONCLUSION** ....................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page**

*Albright v. Hughes*,
   26 N.E.2d 576 (Ind. Ct. App. 1940)....................................................................7

*Alexander v. Buckeye Pipe Line Co.*,
   374 N.E.2d 146 (Ohio 1978) ........................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................3, 4

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
   528 F.3d 426 (6th Cir. 2008) ........................................................................7

*Beasley v. Monoko, Inc.*,
   958 N.E.2d 1003 (Ohio Ct. App. 2011)............................................................4

*Chambers v. Hunt Petroleum Corp.*,
   320 S.W.3d 578 (Tex. App. 2010)..................................................................9

*Commercial Resource Grp. v. J.M. Smucker Co.*,
   753 F.3d 790 (8th Cir. 2014) ........................................................................9

*Crugher v. Prelesnik*,
   761 F.3d 610 (6th Cir. 2014) ........................................................................4

*Geinosky v. City of Chicago*,
   675 F.3d 743 (7th Cir. 2012) ........................................................................7

*Glickman v. Coakley*,
   488 N.E.2d 906 (Ohio Ct. App. 1984)............................................................9

*Guild Assoc., Inc. v. Bio-Energy (Wash.) LLC*,
   No. 2:13-cv-1041, 2014 WL 2767605 (S.D. Ohio June 18, 2014)........................17

*Hocking Valley Cmty. Hosp. v. Cmty. Health Plan of Ohio*,
   No. 02CA28, 2003 WL 21904586 (Ohio Ct. App. Aug. 6, 2003)........................15

*Hope Acad. Broadway Campus v. White Hat Mgmt., L.L.C.*,
   4 N.E.3d 1087 (Ohio Ct. App. 2013)..............................................................5

*Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*,
   474 N.E.2d 271 (Ohio 1984) ........................................................................5

**Cases (continued)** **Page**

*Jenkins v. Fraley*,
    No. 1318, 1981 WL 401358 (Ohio Ct. App. Nov. 24, 1981) ...................................6

*Kenney v. Chesapeake Appalachia, L.L.C.*,
    31 N.E.3d 136 (Ohio Ct. App. 2015) ........................................................................6

*Klinger v. Corr. Corp. of Am., Inc.*,
    No. 4:11CV2299, 2012 WL 12897338 (N.D. Ohio Nov. 28, 2012) ......................17

*Lutz v. Chesapeake Appalachia, L.L.C.*,
    71 N.E.3d 1010 (Ohio 2016) .............................................................................4, 5

*Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ.*,
    872 N.E.2d 322 (Ohio Ct. App. 2007)................................................................4, 5

*Nagle Heating & Air Conditioning Co. v. Heskett*,
    585 N.E.2d 866 (Ohio Ct. App. 1990) ...................................................................15

*Novia Commc'n v. Weatherby*,
    No. 16-cv-587, 2017 WL 4286777 (N.D. Ohio Sep. 27, 2017)...............................6

*Oden v. Assoc. Materials, Inc.*,
    945 N.E.2d 1123 (Ohio Ct. App. 2010) ..................................................................4

*Oglebay Norton Co. v. Armco, Inc.*,
    556 N.E.2d 515 (Ohio 1990) ..................................................................................5

*Plikerd v. Mongeluzzo*,
    596 N.E.2d 601 (Ohio Ct. App. 1992)................................................................5, 6

*Qutifan v. Shafiq*,
    70 N.E.3d 43 (Ohio Ct. App. 2016) ........................................................................5

*Raeuber v. Cent. Nat'l Bank*,
    112 F. Supp. 865 (N.D. Ohio 1953) .......................................................................5

*Rhodes v. Rhodes Indus., Inc.*,
    595 N.E.2d 441 (Ohio Ct. App. 1991) ...................................................................5

*Ritchie v. Cordray*,
    461 N.E.2d 325 (Ohio Ct. App. 1983).........................................................6, 9, 15

*Rothstein v. Steinberg*,
    No. 5:08CV0673, 2008 WL 5716138 (N.D. Ohio June 9, 2008)..........................17

**Cases (continued)**                                                                    **Page**

*Schafer v. Soderberg & Schafer,*
    964 N.E.2d 24 (Ohio Ct. App. 2011) ...................................................................9, 10

*United States v. 969.46 Acres of Land,*
    386 F. Supp. 793 (M.D.N.C. 1974) .........................................................................7

*Wagner v. Menke,*
    20 Ohio Law Abs. 501 (Ohio Ct. App. 1935).................................................6, 7, 9


**Statutes**

Ohio Rev. Code § 1301.308...........................................................................................16

Ohio Rev. Code § 1303.40.............................................................................................16


**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................3

Fed. R. Civ. P. 12 ....................................................................................................17, 18

Fed. R. Civ. P. 16 ....................................................................................................16, 17

Fed. R. Civ. P. 26 .............................................................................................16, 17, 18

Fed. R. Civ. P. 37 ..........................................................................................................18


**Other**

Ohio Jur. 3d Contracts § 21 (2018)................................................................................6

## <u>STATEMENT OF ISSUES</u>

1) Would extrinsic evidence be helpful and admissible in construing a disputed ████ provision in the parties' Patent License Agreement?

2) Where the ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████?

3) Did Plaintiff Ravin Crossbows, LLC ("Ravin") ████████████████████ ████████████████████████████████████████ ████████████████████?

4) Did Ravin ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████)?

5) Did Ravin pay for royalties accrued in the First Quarter of 2018 with a check that Ravin ████████████████████████████ saying nothing about the First-Quarter-2018 royalties?

6) Could Ravin have unilaterally withdrawn its acceptance of the ████████████ ████████████████████████████████████████ ████████████████████?

7) Has Ravin established good cause for staying discovery merely by filing a Rule 12(b)(6) motion to dismiss, where discovery would help the Court in resolving the parties' dispute?

## SUMMARY OF ARGUMENT

Plaintiff Ravin Crossbows, LLC ("Ravin") and Defendant Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies ("TenPoint") entered into a Patent License Agreement ("Agreement") in 2015 under which, *inter alia*, Ravin would pay TenPoint royalties for a license to TenPoint's patented technology. ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

TenPoint therefore requested payment of royalties then incurred and due.  Ravin disagreed, ████████

████████████████████████████████████████████████████████████

███████████████████████████████████████, though the check's accompanying letter was silent regarding these royalties.

Extrinsic evidence is permissible in construing contracts (a) to fill in a term omitted from the four corners of a writing with a presumption of reasonableness, (b) to illuminate the parties' intent and circumstances of contract execution if the extrinsic evidence is not contradictory to the written terms, or (c) to resolve an ambiguous term.  Because the Agreement does not expressly state ███████████████████████████████████████████████████████.

The Agreement's negotiation and performance supports TenPoint's position.  Because Ravin had

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████.

Aside  from  the  ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████.

Ravin's subsequent shifting positions to the contrary are incorrect because once a party accepts an offer, the party may not unilaterally withdraw that acceptance and re-accept the original offer on different terms – and do this twice!  Nor could TenPoint have unilaterally taken a portion of the check toward the due royalties and returned the remainder, after Ravin refused consent.  Because Ravin has still not paid those royalties, it is in breach of the Agreement.

Under the Fed. R. Civ. P., discovery should have commenced almost a month ago.  Yet despite its obligation to participate in the Rule 26(f) Conference, Ravin has refused and has moved for a stay.  However, it has not shown good cause for delaying discovery because (a) a Rule 12(b)(6) motion to dismiss is typically insufficient to stay discovery, (b) discovery will provide evidence that will be helpful in resolving the dispute, and (c) Ravin's confidentiality concerns are easily addressed by a protective order.  Accordingly, both of Ravin's motions should be denied.

## I.    <u>INTRODUCTION</u>

In response to the Amended Complaint ("Compl.") filed by Plaintiff Ravin Crossbows, LLC ("Ravin"), Doc. Nos. 31-32, Defendant Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies ("TenPoint") filed its Answer and Counterclaims ("Countercl."), Doc. Nos. 40-41.  Instead of answering the counterclaims, Ravin filed a motion seeking dismissal of the counterclaims and a stay of discovery.  ("Mot.," Doc. No. 46; Mem. P. & A. Supp. Mot. Dismiss ("Mot. Mem."), Doc. Nos. 47-48.)  TenPoint herein opposes that Motion.

## II.    <u>BACKGROUND</u>

### A.    **Patent License Agreement**

In 2015, Ravin reached out to TenPoint, seeking to license a family of patents owned by TenPoint.  (Countercl. ¶5, Doc. No. 41 at 345.)  During negotiations, the parties agreed, *inter alia*, that Ravin ████████████████████████████████████ (*Id*. ¶6, Doc. No. 41 at 346; Patent License Agreement ("Agreement," attached as Ex. A to Compl) §2.1, Doc. No. 32-1 at 287.)  Ravin would also ██████████████████████████████ ████████████████████████████████████.  (Countercl. ¶7, Doc. No. 41 at 346; Agreement §2.1, Doc. No. 32-1 at 287.)  Ravin ███████████████████████ ████████████████████████████████████ ██████████████████████████ (Countercl. ¶8, Doc. No. 41 at 346; Agreement §2.1, Doc. No. 32-1 at 287.)  Ravin explained during negotiations that it wanted such ████████████████████████████████████ ███████████████ (Countercl. ¶9, Doc. No. 41 at 346.)

As Ravin started selling crossbows, it began ███████████████████ ████████████████████████████████████. (*Id*. ¶¶

1

13-14, Doc. No. 41 at 347.)  Ravin was aware that ██████████ no later than after the close

of the Third Quarter of 2017, ████████████████████████████

██████████ (*Id.* ¶¶ 15, 17.)  Because of Ravin's sales, TenPoint believes that Ravin had the

████████████████████████████████████. (*Id.*

¶¶ 16, 18.)  The same happened after the Fourth Quarter of 2017: ████████████████

████████████████████████████████████

██████████. (*Id.* ¶¶ 19-21.)

On May 3, 2018, almost eight months after ██████████████, Ravin sent TenPoint a

check for ██████ accompanied by a letter claiming to ████████████████; that letter said

nothing about the First-Quarter-2018 royalties, which were then due and unpaid.  (*See id.* ¶¶ 22-

24, Doc. No. 41 at 347-48; Countercl. Ex. 2, Doc. No. 41-2 at 355.)  When TenPoint explained

that ██████████████and that in any case Ravin owed it royalties for the First Quarter of 2018,

Ravin disputed that ██████████ but changed its position regarding the ██████ check;

Ravin now said that the check included ████████████████████████████

████████████████████████████████████. (*See*

Countercl. ¶¶ 25-26, Doc. No. 41 at 348; Countercl. Ex. 3, Doc. No. 41-3 at 356.)  When TenPoint

subsequently requested consent to take the ██████ that both parties agreed it was owed for First-

Quarter-2018 royalties ████████████████████, Ravin refused, so TenPoint

sent back the entire check uncashed.  (*See* Countercl. ¶¶ 27-29, Doc. No. 41 at 348.)

    **B.**    **Lawsuit**

At that point, the parties realized that they had a dispute regarding the Agreement's ██████

Yet instead of proceeding under the Agreement's dispute resolution clause (§7.5, Doc. No. 32-1

at 294), which requires a meeting of executives followed by mediation before bringing suit, Ravin

instead sued TenPoint, alleging imminent and irreparable harm.  (*See* Original Complaint ¶¶ 13, 15, 18, 20, 29, Doc. No. 1 at 3-5, 7.)  But despite urging for a quick resolution of the dispute, Ravin has interjected delay after delay in this proceeding.

For example, the Agreement includes a confidentiality provision (*see* §3.2, Doc. No. 32-1 at 290), but Ravin failed to file the original Complaint under seal and needlessly opposed TenPoint's request for sealing.  (*See* Pl.'s Opp'n Def.'s Mot. Seal, Doc. No. 7.)  When TenPoint reached out to Ravin back in September regarding the Rule 26(f) Conference, Ravin declined to participate and instead wished to wait for a case management conference scheduling order before holding the Rule 26(f) Conference.  (*See* Def.'s Reply Supp. Mot. Stay Pl.'s Mot. Prelim. Inj., Doc. No. 27 at 237 n.2.)  After the Court directed the parties in early October to meet and confer regarding a proposed plan for expeditious proceeding on the merits to resolve TenPoint's alternative motion for limited, expedited discovery, Ravin refused to treat the meet-and-confer as a Rule 26(f) Conference and opposed any discovery.  (*See* Def.'s Proposed Case Mgmt. Plan, Doc. No. 36 at 305-06.)  After TenPoint answered Ravin's Amended Complaint for declaratory judgment with counterclaims, Ravin filed the instant motion to dismiss, instead of simply answering the counterclaims, and also moved to stay discovery.  (*See* Mot., Doc. No. 46.)

## III.    RAVIN'S MOTION TO DISMISS SHOULD BE DENIED.

### A.    Legal Standard for Motion to Dismiss

Fed. R. Civ. P. 8(a)(2) requires just a short and plain statement of the claim showing that the pleader is entitled to relief.  A complaint, or counterclaim in this case, must contain sufficient factual matter to state a plausible claim to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To meet the plausibility requirement, which is lower than a probability requirement, a party must plead factual content that, accepted as true, allows the court to draw the reasonable inference that

the opponent is liable for the alleged claim.  *Id*.  All factual allegations in the pleading are accepted

as true and are construed in the light most favorable to the nonmoving party.  *Crugher v. Prelesnik*,

761 F.3d 610, 614 (6th Cir. 2014).

### B.    Extrinsic Evidence May Be Received in Construing the Agreement.

Procedurally, Ravin insists that the Court look only within the four corners of the

Agreement, that no extrinsic evidence may be admitted to aid the Agreement's construction, and

that the dispute may be resolved as a matter of law.  (Mot. Mem., Doc. No. 47 at 393-94, 398.)

For all its insistence, Ravin is mistaken.

Under Ohio law,[1] the construction of written contracts is a matter of law for the Court.

*Beasley v. Monoko, Inc.*, 958 N.E.2d 1003, 1011 (Ohio Ct. App. 2011).  The purpose of

construction is to realize and give effect to the intent of the parties, presumed to reside in the

language used in the contract.  *Id*.  But while the preference is to look only to the four corners of

the writing itself, looking outside the four corners during construction is also permitted.

For example, if a contract term is ambiguous (i.e., is susceptible to more than one

reasonable interpretation, or if its meaning cannot be determined from reading the entire written

contract), then extrinsic evidence (including the circumstances surrounding the parties during

contract formation, the parties' objectives in entering the contract, and other acts by the parties

that demonstrate the construction they gave to their agreement) may be introduced to resolve the

ambiguity, in which case construction becomes a question of fact.  *Oden v. Assoc. Materials, Inc.*,

945 N.E.2d 1123, 1126 (Ohio Ct. App. 2010); *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d

1010, 1012 (Ohio 2016); *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ.*, 872

---

[1] Section 7.5 of the Agreement states that the Agreement shall be governed by Ohio law.
(Agreement, Doc. No. 32-1 at 294.)

N.E.2d 322, 329 (Ohio Ct. App. 2007).  Also, regardless of ambiguity, parol evidence that is not contradictory to the written terms can be admitted to illuminate the circumstances under which the contract was executed, and to explain the intent of the parties as reflected in the contract.  *See Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 445 (Ohio Ct. App. 1991).

As yet another example, where the parties intended to be bound, but the four corners of the writing omit a term, the law may fill in the gap with a presumption of reasonableness.  *Oglebay Norton Co. v. Armco, Inc.*, 556 N.E.2d 515, 519-20 (Ohio 1990); *Qutifan v. Shafiq*, 70 N.E.3d 43, 48-49 (Ohio Ct. App. 2016).  Extrinsic evidence is admissible for the factual determination of reasonableness.  *See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 273 (Ohio 1984).[2]  The above-listed examples illustrate how extrinsic evidence helps the Court properly understand the parties' intentions in entering a contract, which will help resolve this dispute.  By desperately attempting to hide such evidence, Ravin appears to be afraid of the truth.

**C.    Ravin's** ███████████████████████████████████
███████████████████████████████

At the center of this lawsuit is the ██████ provision in §2.1 of the Agreement.  ██████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[2] There are other examples still, though not implicated in this case.  Contract terms need not be stated exactly within its four corners but may be supplied by reference to another document or to an outside source (e.g., an index), in which case evidence of the other document or the outside source is admissible in construing the contract.  *See Hope Acad. Broadway Campus v. White Hat Mgmt., L.L.C.*, 4 N.E.3d 1087, 1097 (Ohio Ct. App. 2013) (outside source), *rev'd in part on other grounds*, 46 N.E.3d 665 (Ohio 2015); *Raeuber v. Cent. Nat'l Bank*, 112 F. Supp. 865, 869 (N.D. Ohio 1953) (another document).  If terms used in a contract have a special meaning (e.g., within a certain geographic location or a particular trade or industry) not reflected on the face of the document, extrinsic evidence of that meaning may be introduced.  *Lutz*, 71 N.E.3d at 1012; *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 151 (Ohio 1978).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

    Turning to Ravin's substantive arguments, the main one appears to be that, because the

Agreement did not expressly ████████████████████████████████████████████

███████████████████████████████████████ the Agreement Term.[3]  (*See*

Mot. Mem., Doc. No. 47 at 397.)  Again, Ravin is mistaken.  Ravin is correct that the Agreement

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████  Nonexclusive factors evaluated under this inquiry include

the subject matter of the contract, the object of the contract, the situation and conduct of the parties,

---

[3] Per §6.1 of the Agreement, the Term is until the last expiration of the Licensed and Cross-Licensed Patents, unless terminated earlier.  (Agreement, Doc. No. 32-1 at 292.)

and the circumstances attending the contract's performance.  *See* ██████████████

████████████████████████████████████████████████████████

████████████  ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

     1.    <u>The Agreement's Negotiation Supports TenPoint.</u>

During negotiation of the Agreement, Ravin initially (on October 14, 2015) requested a

████████████████████████████████████ under the Agreement, which proposal

TenPoint rejected.  (Schwappach Decl. Ex. F, Doc. No. 15-6 at 171.[5])  So Ravin's next proposal

(on October 26, 2015) was to (1) ████████████████████████████████████████

████████████████████████████████ and (2) include ██████████████████████

████████████████████████████████████████████████████████

██████████████████ (*Id.* at 172.)  A subsequent proposal by Ravin (on November 9, 2015)

added that the ████████████████████████████████████████████ (*Id.*)

TenPoint's November 9, 2015 response proposed that the ██████████████████.

Specifically, TenPoint proposed the following language for §2.1(ii): ██████████████████

████████████████████████████████████████████████████████

---

[4] Properly ascertaining these facts and circumstances requires discovery, which defeats one of Ravin's bases for staying discovery, as discussed below in § IV.C.

[5] These portions of the negotiations are part of the record of this case, and the negotiations are central to the resulting Agreement underlying this suit.  (*See* Mot. Mem., Doc. No. 47 at 390-91 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).)  TenPoint submits this information to illustrate the facts it expects to prove and not for the purpose of converting this motion into one for summary judgment.  *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

████████████████████████████████████████████████████████████████

████████████  (Relevant excerpt of this draft attached herein as Exhibit A (emphasis added).[6]

This wording would have required Ravin to ██████████████████████████████████████

████████████████████.[7]

████████Ravin responded the same day and explained that it wanted the ██████████████████

███████████████████.  (Schwappach Decl. Ex. F, Doc. No. 15-6 at 173.)  So Ravin's

counterproposal simply modified TenPoint's November 9 proposal quoted above by adding ████

████████████  after "Licensee shall."  In other words, Ravin's modified §2.1(ii) was as follows,

with Ravin's addition underlined:



(Relevant excerpt of this draft attached herein as Exhibit B.)  This wording made it without further

change into the executed Agreement.  (*See* Agreement, Doc. No. 32-1 at 287.)  All that Ravin's

revision did was make a ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

████████Additionally, Ravin explained during negotiations why it demanded the █████████████

████████████████████████████████████████████████████████████████

███████████████████████████████.  (Countercl. ¶9, Doc. No. 41 at 346;

---

[6] See n.5.  TenPoint can submit the entire draft if the Court wishes to see it.

[7] If this wording ultimately made it to the executed Agreement, surely Ravin would not argue that,

████████████████████████████████████████████████████████████████

Schwappach Decl. Ex. F, Doc. No. 15-6 at 172-73.) ████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.[8] (Countercl. ¶¶

18, 21, Doc. No. 41 at 347; *see also* Pl.'s Br. Amount in Controversy, Doc. No. 44 at 369.)  By

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████.

       2.    <u>The Agreement's Performance Supports TenPoint.</u>

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Also, the general

rule is that the method prescribed for accepting an offer ████████████████ must be strictly

complied with by the offeree. ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████ The Agreement clearly states ████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ (Agreement, Doc. No. 32-1 at 287.)

    Ravin apparently argues that it could just keep making multiple regular quarterly royalty

payments, ████████████████████████████████████████████████████████████

██████. (*See* Mot. Mem., Doc. No. 47 at 396-97 & n.4.)  TenPoint notes that this argument

renders the ██████████████████████████████ virtually meaningless. *See Schafer v.*

---

[8] Discovery is necessary to confirm this, which is another reason for denying Ravin's motion to stay discovery, as explained in § IV.C below.

*Soderberg & Schafer*, 964 N.E.2d 24, 39 (Ohio Ct. App. 2011) (in construing contract, courts should give effect, if possible, to every provision and avoid construction that would render any clause meaningless).  This argument also renders ████████████████████████████████ ████████████████████████████████ is exactly what TenPoint rejected during negotiations, as explained above.

But even under this interpretation, if the accumulated quarterly royalty payments exceeded ████████████████████████████████████████████████.  In other words, if the method of accepting ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ acceptance requirements (not to mention that there would be no consideration to ████████████████████████████████████ ████████████████████████████████████████████).

Here, Ravin first ████████████████████████████████████████. (Countercl. ¶¶ 13, 17, Doc. No. 41 at 347.)  In the Fourth Quarter of 2017, Ravin incurred another ████████ in royalties, bringing the ██████████████████████████ ████████.  (*See id*. ¶20, Doc. No. 41 at 347; Compl. ¶15, Doc. No. 32 at 278.)  In the First Quarter of 2018, Ravin incurred another ████████ in royalties (*see* Countercl. ¶¶ 26-27, Doc. No. 41 at 348), bringing  the ████████████████████████████████████████████ ████████.  Ravin did not provide royalty reports for all of the Second Quarter of 2018, but it did indicate that it incurred another ████████ in royalties in April 2018 (*see* Pl.'s Br. Amount in Controversy, Doc. No. 44 at 369), bringing the ██████████████████████████

████████████. Any crossbows that Ravin shipped on May 1-3, 2018,[9] before

████████████████████████████████████████████████

████████████████████████████, past which amount there would simply be

no way of accepting ██████. The following table summarizes the incurred royalties after

███████████████████.

| Quarter | Incurred Royalty ████████ | Cumulative Incurred Royalty | ██████████ Incurred Royalty |
|---|---|---|---|
| 3rd Quarter 2017 | ███████ | ██████ | ██████ |
| 4th Quarter 2017 | ██████ | ██████ | ██████ |
| 1st Quarter 2018 | ██████ | ██████ | ██████ |
| April 2018 | ██████ | ██████ | ██████ |
| May 1-3, 2018 | ?? | ██████ | ██████ |

As mentioned above, ████████████████████████

████████████████████████████████████████. It is

unreasonable to ████████████████████████████████

██████████████. ████████████████████████████████

September 2017. (Countercl. ¶13, Doc. No. 41 at 347.) But Ravin chose ██████████

████████████████████████████████████████████

████████████████████. (*Id*. ¶¶ 16, 19, 23, Doc. No. 41 at 348.) Waiting that

████████████████████████████████████.

---

[9] Ravin refused to provide this information. (*See* Countercl. ¶41, Doc. No. 41 at 350.) As discussed in § IV.C below, discovery is needed to obtain the full royalty reports for the Second Quarter of 2018 to determine whether Ravin ████████████████████████████████████ ██████████████.

**D.**   **Ravin Failed to Develop Its Argument that Royalty Reports Need Not Be Provided ███████████████████████████.**

Almost as an aside in the Background section of its Memorandum, Ravin nakedly asserts that if the Agreement's ███████████████████ Ravin's "obligation to disclose competitive sales information to TenPoint[] would end." (*See* Mot. Mem., Doc. No. 47 at 388.) The Agreement says nothing about the reporting obligation ending before the Agreement ends, and Ravin has not explained its position here. TenPoint would wish to know how its patented technology is exploited by its licensee regardless ███████████████, which supports continuing the reporting obligation ██████████████████████████, as explained previously).

**E.**   **Ravin's ██████ Check Did Not Properly Pay the Royalties for the First Quarter of 2018.**

In §III.A.2.a of its Memorandum, Ravin argues that it properly and timely paid the royalties it owes TenPoint for the First Quarter of 2018 (by tendering a check that ██████████████ ██████████), and that TenPoint admits this. (*See* Mot. Mem., Doc. No. 47 at 392.) Ravin is again mistaken, and its continuously shifting positions hurt its credibility, as explained below.

1.   Ravin Unequivocally Stated That ███████████████████ ████████████████████████████████.

On May 3, 2018, Ravin sent TenPoint a check for ████████, accompanied by a letter.[10] (Countercl. ¶¶ 23-24, Doc. No. 41 at 348; Countercl. Ex. 2, Doc. No. 41-2 at 355.) This letter nowhere even mentions First-Quarter-2018 royalties or Second-Quarter-2018 royalties. (*See* Countercl. Ex. 2, Doc. No. 41-2 at 355.) Rather, it clearly states that Ravin had previously ("[t]o

---

[10] The letter was dated May 2 but actually sent May 3. (*See* Schwappach Decl. Ex. D, Doc. No. 15-4 at 161-62.)

date") █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████. (*Id*.) This letter does not say that Ravin previously paid royalties for the First and Second

Quarters of 2018 █████████████████████████████. (*See id*.) Nor does the letter say that

the ████████████████████████████████████████████████

██████████████████████████████████. (*See id*.) Rather, it clearly and

unambiguously says that the ████████████████████████. (*See id*.)

    2.   <u>Ravin's Subsequent Shifting Positions Hurt Its Credibility.</u>

Only after TenPoint subsequently explained to Ravin that even if ████████████████████

██████████████, Ravin still had to pay the royalties incurred up to that date (i.e., for the First

and Second Quarters of 2018) did Ravin revise its position and try to argue, on May 7, that the

████████████████████████████████████████████████████████

██████████████████████████. (*See* Countercl. ¶26, Doc. No. 41 at 348; Countercl. Ex.

3, Doc. No. 41-3 at 356; Schwappach Decl. Ex. F, Doc. No. 15-6 at 175, 177.)[12]

But even this revised position did not last.  TenPoint pointed out that under the logic of

Ravin's revised position, Ravin would still owe TenPoint royalty reports for the Second Quarter

of 2018 up to ████████████████████████, and that Ravin would still need to pay the

---

[11] As Ravin pointed out, the actual payments made by then (for royalties through the Fourth
Quarter of 2017) totaled ████████████████████████. (*See* Compl. ¶¶ 15-16, Doc.
No. 32 at 278.)

[12] As further evidence that Ravin did not intend the ██████████ check to cover the 2018 First and
Second Quarter royalties, Ravin's May 2 letter accompanying the check did not include the
required royalty reports for these Quarters.  (*See* Countercl. Ex. 2, Doc. No. 41-2 at 355;
Schwappach Decl. Ex. F, Doc. No. 15-6 at 169-70.)  Only after Ravin changed its position on May
7 did it provide the royalty reports for the First Quarter of 2018.  (*See* Countercl. Ex. 3, Doc. No.
41-3 at 356; Schwappach Decl. Ex. F, Doc. No. 15-6 at 175, 177.)

royalties incurred in that Quarter ████████████████. (*See* Schwappach Decl. Ex. F, Doc. No. 15-6 at 175.)  At first Ravin argued that the April and May 2018 sales were "not relevant."  (*See id.* at 176.)  However subsequently, in response to this Court's question about the amount in controversy, Ravin revised its position yet again to now argue that the █████████████████ ███████████████████████████████████████████████████. (*See* Schwappach Decl. ¶¶ 4-5, Doc. No. 45 at 373-74; Pl.'s Br. Amount in Controversy, Doc. No. 44 at 369.)  If so, then the █████████████████████████████████████████████████████████████ ██████████████████████████████████████████.[13]

Ravin continues to change its position to minimize any royalties it owes TenPoint.  But as explained above, the letter accompanying the ██████ check said nothing about any portion of the check being applied to the royalties incurred in the First or Second Quarters of 2018, ████ ████████████████████████████████████████.  Ravin's argument (that it paid the First-Quarter-2018 royalty by a check that was ███████████████████████) is analogous to a seller who provided a service for a customer and sends him a bill with a deadline by which to pay for the service.  The seller subsequently and separately offers to sell a product to the same customer, and the customer accepts by sending a check with a letter clearly stating that the check is to purchase the product.  Then, when the seller informs the customer that he has not paid his overdue service bill, the customer argues that he did indeed pay the bill by sending the check –

---

[13] This number is reduced even further to ██████ after correcting for Ravin's arithmetic error of ████. (*See* Compl. ¶16, Doc. No. 32 at 278; Mot. Mem., Doc. No. 47 at 385 n.1.)  This ████ is less than ████████████████████████████ specified in the Agreement.  Yet even this latest revised position does not account for any crossbows that were shipped in May (1-3) before Ravin ██████████████████████████.  Discovery is needed regarding such shipments, as explained in § IV.C below.  How low would Ravin allow this ██████████████ to get and still argue, with a straight face, that such a ██████████████████████████████████████████ ████████████████████████████████████████████████

14

omitting entirely that he sent the check for the product, not for the service bill.  Apparently Ravin thinks that it could have just sent TenPoint money without any indication of what the money is to be applied to, or even a contrary indication, yet the money would nevertheless automatically be applied first to any incurred royalties ████████████████████████.  Nothing in the Agreement supports such a fanciful position.

      3.     <u>Ravin's Shifting Positions Are Ineffective Under Contract Law.</u>

Acceptance of an offer (█████████████████████) must be made strictly as required by the offeror. ███████████████.  Under the Agreement in this case, this means by ███████████████████.  Once an offer has been accepted, the contract comes into existence, *see Hocking Valley Cmty. Hosp. v. Cmty. Health Plan of Ohio*, No. 02CA28, 2003 WL 21904586, at *3 (Ohio Ct. App. Aug. 6, 2003), and the offerree-acceptor cannot unilaterally go back and modify his acceptance – that would require consent from the offeror to modify the contract, *see Nagle Heating & Air Conditioning Co. v. Heskett*, 585 N.E.2d 866, 868 (Ohio Ct. App. 1990).

Here, once Ravin mailed its check, █████████████████████████████ ████████████████████████████████████████████████████ ████████.  Ravin could not subsequently go back and unilaterally withdraw that acceptance (terminating that contract) and effectuate a second acceptance, where this time ██████████ █████████████████████████████████████████████████████ ████████.  Nor could Ravin later withdraw that second acceptance yet again and effectuate a third acceptance, where ███████████████████████████████████████████████ ███████████████████████████████████████████.

4.      Ravin's Actions Prohibited TenPoint from Crediting the Check Toward the
First-Quarter-2018 Royalties.

In light of the dispute over the ████, TenPoint also could not just unilaterally cash the

████████████████████████████████████████████████████

████████████████████████.  *See* Ohio Rev. Code § 1303.40(C) (Ohio's adoption

of § 3-311 (accord and satisfaction) of the Uniform Commercial Code); § 1301.308(B) (reservation

of rights does not apply to accord and satisfaction).  And when TenPoint asked for Ravin's consent

to do so (which would have allowed the First-Quarter-2018 royalties to be paid by the due date),

Ravin refused.  (Countercl. ¶¶ 27-28, Doc. No. 41 at 348; Schwappach Decl. Ex. F, Doc. No. 15-

6 at 173, 175; Schwappach Decl. Ex. G, Doc. No. 15-7 at 180.)  Thus, despite both parties agreeing

that Ravin indisputably owes TenPoint ████ for the First Quarter of 2018, Ravin still has not

paid this royalty, long after its due date, which is a breach of the Agreement, as explained in the

Counterclaims.  (*See* Countercl. ¶¶ 7, 10, 22, 28, 33, 40, Doc. No. 41 at 346-50.)

\* \* \* \* \*

In  summary,  Ravin's ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ and Ravin still has not

paid those royalties, thus breaching the Agreement.

## IV.    RAVIN'S MOTION TO STAY DISCOVERY AND THE RULE 26(f) CONFERENCE SHOULD ALSO BE DENIED.

### A.      Applicable Law

Discovery is a standard feature of federal civil suits.  *See* Part V (Rules 26-27) of Fed. R.

Civ. P.  Ravin surely knew this when it filed this suit.  Fed. R. Civ. P. 26(d)(1), (f)(1), and 16(b)(2)

work together to set the default time for the start of discovery.  Rule 26(d)(1) generally requires the parties to have a Rule 26(f) Conference before seeking discovery.  Rule 26(f)(1) generally requires the parties to have such a Conference "as soon as practicable" and sets an outer limit of 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).  The Advisory Committee Notes to the 1993 Amendment of Fed. R. Civ. P. 26 express the concern that "the commencement of discovery is not delayed unduly."  Rule 16(b)(2) requires the scheduling order to be issued "as soon as practicable" and, absent a finding of good cause for delay, sets an outer limit of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared, which outer limit was recently shortened to "reduce delay at the beginning of litigation," *see* Advisory Committee Notes to the 2015 Amendment of Fed. R. Civ. P. 16.

The Court may stay discovery upon a showing of good cause.  *Rothstein v. Steinberg,* No. 5:08CV0673, 2008 WL 5716138, at *3 (N.D. Ohio June 9, 2008).  The movant must show a particular and specific need for the stay, as opposed to making conclusory statements.  *Id.*  In ruling on such a motion, the Court weighs the burden of proceeding with discovery upon the party seeking a stay against the hardship that would be worked by a denial of discovery, and also takes into account any implicated societal interests.  *Guild Assoc., Inc. v. Bio-Energy (Wash.) LLC*, No. 2:13-cv-1041, 2014 WL 2767605, at *4 (S.D. Ohio June 18, 2014).  "However, one argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6) . . . ."  *Id.* (explaining why this is so); *see also Klinger v. Corr. Corp. of Am., Inc.*, No. 4:11CV2299, 2012 WL 12897338, at *1 (N.D. Ohio Nov. 28, 2012) ("In general, courts will not stay discovery because of a pending motion to dismiss").

17

**B.      Per the Fed. R. Civ. P., Discovery Should Have Already Commenced.**

Ravin served TenPoint with the complaint on September 13, 2018, *see* Return of Service, Doc. No. 28 at 253-54, which, absent a finding of good cause, sets the scheduling-order outer limit at December 12.  Thus, the parties should have held the Rule 26(f) Conference, which would have opened discovery, by November 21.

The parties previously conferred on October 15 regarding a proposed plan for expeditious proceeding on the merits.  (*See* Def.'s Proposed Case Mgmt. Plan, Doc. No. 36 at 305; Pl.'s Meet and Confer Report, Doc. No. 37 at 314.)  TenPoint believes that this conference qualified as the Rule 26(f) Conference, while Ravin disagrees.  (*See* Def.'s Proposed Case Mgmt. Plan, Doc. No. 36 at 305-06.)  To accommodate Ravin's concerns that it did not know that the October 15 conference would be a Rule 26(f) Conference, TenPoint contacted Ravin on November 6 and offered to hold what Ravin would consider to be a Rule 26(f) Conference, explaining that this conference must occur by November 21.  (Email from Skeriotis to Bartsch, attached herein as Exhibit C.)  Despite its obligation to participate in the Rule 26(f) Conference, *see* Fed. R. Civ. P. 26(f)(1), 37(f), Ravin refused and instead filed this Motion to stay discovery, seeking to thwart the natural and typical progression of a lawsuit that it filed.  By asking for a stay, Ravin essentially admits that a Rule 26(f) Conference should have been held by now and that discovery should have commenced already.

**C.      Ravin Has Not Established Good Cause for Delaying Discovery.**

Ravin has not shown good cause for staying discovery.  The mere fact that it filed a garden-variety Rule 12(b)(6) motion to dismiss is typically insufficient, as explained above.  Ravin does not really explain any particular and specific need for the stay or how it would be unduly burdened or prejudiced if discovery were to proceed.  Ravin generally raises a concern about sharing its

confidential information with a competitor, *see* Mot. Mem., Doc. No. 47 at 400, but Ravin must have known that discovery is a regular and normal part of lawsuits when it chose to sue TenPoint. Furthermore, any confidentiality concerns can be addressed by a suitable protective order (e.g., with an attorneys-eyes-only provision), as TenPoint already explained.  (*See Def.'s Reply Supp. Mot. Stay Pl.'s Mot. Prelim. Inj.*, Doc. No. 27 at 237.)  TenPoint again reiterates its willingness to work with Ravin to propose a stipulated protective order for the Court's entry.  (*See id.*)

Ravin's other premise – that discovery is neither warranted nor permitted, *see* Mot. Mem., Doc. No. 47 at 398-99 – is simply wrong.  In discussing the substantive merits of the ███ dispute above, TenPoint has explained that extrinsic evidence is admissible to resolve the instant dispute and that discovery is needed to assemble and present that evidence.  The following discovery will aid the Court in properly construing the Agreement and resolving this dispute: the Agreement's negotiation and the circumstances surrounding the parties during the Agreement's formation; the parties' objectives in entering the contract; acts by the parties that demonstrate the construction they gave to the Agreement; and the circumstances attending the Agreement's performance.  (*See* n.4 above.)  Discovery is needed to confirm that Ravin had ████████████ ████████████████████████████████████████████████████████████████ ██████████.  (*See* n.8 above.)  Discovery is needed to verify the accuracy of Ravin's arithmetic regarding the royalties and ████████████, especially since Ravin has already admitted to at least one mistake in its calculations.  (*See* n.13 above.)  Discovery is also needed because Ravin failed to provide royalty reports for the Second Quarter of 2018 before the ████████████.  (*See* n.9 above.)  Ravin may not want any discovery and apparently does not wish the Court to see any of it, but this is the same information that TenPoint has previously explained would be helpful in resolving this dispute.  (*See Def.'s Mot. Stay Pl.'s Mot.*

*Prelim. Inj.*, Doc. No. 18 at 207; *Def.'s Reply Supp. Mot. Stay Pl.'s Mot. Prelim. Inj.*, Doc. No. 27 at 236.)

## V.      <u>CONCLUSION</u>

For the above reasons, TenPoint respectfully requests the Court to deny Ravin's motion to dismiss TenPoint's counterclaims and Ravin's motion to stay discovery.

Dated: December 17, 2018                    EMERSON THOMSON BENNETT, LLC

<u>*s/ John Skeriotis*</u>
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendant Hunter's Manufacturing*
*Company, Inc. d/b/a TenPoint Crossbow Technologies*