# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Ravin Crossbows, LLC,

                 Plaintiff,

     vs.

Hunter's Manufacturing Company, Inc., d/b/a
TenPoint Crossbow Technologies,

                 Defendant.

Court File No. 5:18-cv-1729
The Honorable Sara Lioi

Magistrate Judge George J. Limbert

**REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF
PLAINTIFF RAVIN CROSSBOWS, LLC'S
MOTION TO DISMISS
COUNTERCLAIMS AND TO STAY
DISCOVERY AND RULE 26
CONFERENCE**

## INTRODUCTION

The parties' License Agreement ("Agreement") unambiguously gave Plaintiff Ravin Crossbows, LLC ("Ravin") the opportunity to ██████████████████████████ ████████████████████████████ from Defendant Hunter's Manufacturing Company, Inc., d/b/a TenPoint Crossbow Technologies ("TenPoint") ████████████████████ ████████████████████████████████████████████████████ ███████████████████████████ Now regretting the deal that it struck, TenPoint seeks to re-write the parties' Agreement by inviting the Court to examine irrelevant extrinsic evidence that the Court is legally prohibited from viewing. Because it is black letter law in Ohio that courts may not review extrinsic evidence to interpret or vary the written terms of an unambiguous agreement, the Court should reject TenPoint's illicit invitation and grant Ravin's Motion to Dismiss.

**ARGUMENT**

I.    **Extrinsic Evidence May Not Be Used to Interpret or Construe the License Agreement or to Contradict or Vary Its Terms.**

Under Ohio law, "[t]he interpretation of a written contract, including whether the language admits of any ambiguity, is a question of law for determination by the court." *Am. Aluminum Extrusions of Ohio, LLC v. Neb. Plastics, Inc.*, No. 5:09-CV-00763, 2010 WL 2342485, at *2 (N.D. Ohio June 8, 2010) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008)).  The Sixth Circuit describes Ohio law regarding interpretation and construction of a written, integrated agreement as "clear" and holds:

> Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions.... *Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence*.

*Constr. Interior Sys., Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (ellipsis in original) (quoting *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 923 (Ohio 1989)).  "A written contract *must* be construed and interpreted from its four corners without consideration of parol evidence, i.e., evidence that would contradict or vary the terms of the contract." *Caley v. Glenmoor Country Club, Inc.*, 1 N.E.3d 471, 480-81 (Ohio Ct. App. 2013) (emphasis added) (quoting *Meade v. Kurlas*, No. CA2010-08-216, 2011 WL 1345156 (Ohio Ct. App. Apr. 11, 2011)).  Extrinsic evidence is excluded when interpreting and construing a written contract because extrinsic evidence "cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." *Galmish v. Cicchini*, 734 N.E.2d 782, 789 (Ohio 2000) (citation omitted).  When, as here, there is an integrated written agreement, "prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations."

2

*Id.* (citation omitted).  Here, because the parties' Agreement is simple and unambiguous, and is reasonably susceptible of only one interpretation, the Court cannot review extrinsic evidence to interpret or vary its clear language, and should reject TenPoint's invitation to do so.

### A.  The License Agreement Is Not Ambiguous.

As Ravin demonstrated in its Opening Memorandum, the License Agreement is susceptible of only one reasonable interpretation and it means what it says:



(Am. Compl. Ex. A [Doc. No. 32-1, at 287].)  The parties' plain language controls and must be given effect, and TenPoint cannot prevail unless the Court rewrites the agreement by changing terms and ignoring others.  TenPoint's interpretation impermissibly asks the Court to ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

TenPoint is a mature, sophisticated business that has, over the years, patented various designs it uses in the manufacture of its crossbows.  When Ravin approached TenPoint about licensing some of those patents, TenPoint was represented in negotiations by its own patent counsel.  If the parties had intended—or TenPoint had wanted—to create either ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, they would have put that language into the Agreement.  For example, the parties could have specified that ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3



The Court must now give effect to the plain language that the parties chose.  That language gave Ravin the right ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The law does not permit TenPoint to engage in an after-the-fact conjecture and myth-making by cobbling together its selections of extrinsic evidence to change the meaning of the Agreement.  That TenPoint persists in doing so here is in contempt of well-settled law.

**B.    The License Agreement Is Not Missing Material Terms.**

Likewise, the absence of a specific deadline ▮▮▮▮▮▮▮▮▮▮▮▮▮ does not create a missing material term, nor does it permit an after-the-fact addition of a specific deadline or make time of the essence.  TenPoint's reliance on statements in cases addressing option contracts with *specific deadlines* is misplaced.  *See Glickman v. Coakley*, 488 N.E.2d 906, 913 (Ohio Ct. App. 1984) (stating that time is of the essence in agreement in which parties specified time and manner of exercise as "notice to the Shareholders delivered on or before March 15, 1980").  TenPoint cites no authority supporting a rule that, as a matter of law, time is always of the essence in every option contract, particularly when the parties chose *not* to limit the time for acceptance by a deadline beyond the terminal date of the Agreement.

In addition, opinions addressing classic option contracts in which "the seller offers to sell his real property upon fixed terms, and he and his *prospective buyer* agree that, in exchange for a consideration paid by the buyer, the seller will leave his offer open for a specified time" and for which "the option contract is not a contract to buy and sell the property, but only a contract

whereby the seller agrees to leave his offer to sell open for a time-certain" are not instructive here. *Ritchie v. Cordray*, 461 N.E.2d 325, 327 (Ohio Ct. App. 1983) (emphasis added). ████ ████████████████ is obviously not that form of option, since ██████████████████████ was made not to hold open any offer for a specified period of time, but rather was ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ well before Ravin began production of its own crossbows. Moreover, in a true option contract, "acceptance of the main offer contained in an option contract is not operative until received by the offeror." *Id.* at 328. Here, the Agreement was fully operative regardless of whether ████████████████████████████████████ ████████████████████████ is more closely analogous to an early termination provision than a true option contract, and the cases cited by TenPoint addressing real estate option contracts do not provide an apt analytical framework.

In any event, "when no time of performance is specified in a contract, the legal effect is that it is to be performed within a reasonable time and parol evidence is not admissible to show an agreement that it shall be performed at a particular time." *U.S. Constr. Corp. v. Harbor Bay Estates, Ltd.*, 876 N.E.2d 637, 642 (Ohio Ct. App. 2007) (citation and internal quotation marks omitted). Here, the parties specified that Ravin ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████ Because there are no missing material terms, the Court cannot examine parol evidence to create new terms out of whole cloth, as TenPoint would have it do.

**II.** ████████████████████████████████████████████████████ ████████████████████

Even if the law required the Court to determine whether Ravin ████████████████████ ████████████████████████████████████████████████████████████████████████

5

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████  Performance of a condition within the time period established by the parties'

written agreement is inherently reasonable.  TenPoint offers no support for its bare assertion that

██████████████████████████████████████████████████

█████████████████████████████

The facts and reasoning of *Harlett v. Dunbar Industries, Inc.*, No. L 78-289, 1979 WL
207261, at *1 (Ohio Ct. App. Oct. 19, 1979) (reversing trial court judgment in favor of lessor),
are instructive.  *Harlett* involved a lease agreement under which the lessees agreed to pay the
lessor a $600 security deposit plus $170.00 per month in rent and taxes.  *Id.* at *1-2.  The lease
agreement also gave the lessees the option to purchase the property for $20,950.00 before the
expiration of the lease (initially set at one year), less a credit equal to the security deposit plus all
rent payments previously made.  *Id.* at *1.  The lease agreement was extended in June 1970,
allowing the lessees the option to purchase the property at "such a time as water conditions in the
area make lending institution application feasible."  *Id.*  After several years, in September 1976,
the water problems in the area were fixed, and five months later, in February 1977, the lessees
sought a loan for the purchase.  *Id.*  Thereafter, the lessor refused to allow the lessees to exercise
the purchase option.  On appeal, the Ohio Court of Appeals reversed the trial court, finding that
the lessees had effectively exercised the option contained in the lease agreement by complying
with all conditions precedent in 1977.  *Id.* at *5.  The appellate court held that the term "such a
time as water conditions in the area make lending institution application feasible" constituted "a

time which is ascertainable from the express language of the contract and is a definite time," and thus, no reasonableness inquiry was necessary.  *Id.*

The same reasoning applies here. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ and no reasonableness inquiry is appropriate or necessary.

**III.**    ███████████████████████████████████████████
████████████████████████████████

TenPoint's argument concerning the manner in which Ravin ████████████████

is hard to follow and legally ineffective.  The parties' Agreement contemplates that Ravin ████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

7

████████████████████████████████████████

███████████████████████████████ This argument is absurd.  When, as here, an

agreement does not specify the manner of performance, performance may be made by the

obligor by whatever means convenient to it.  *See, e.g., Kenney v. Chesapeake*, 31 N.E.3d 136,

151 (Ohio Ct. App. 2015) (rejecting argument about defective notice or exercise because

contract "did not require the exercise of the option by a particular ritual.  The lease did not

require payment in a certain form, e.g. from a particular account or paid directly by the lessee.").



████████████████████████ Ravin's motion should be granted and TenPoint's

counterclaims should be dismissed.

99533863.5 0056169-00059

**IV.** 

**V.**   **Discovery Should Be Stayed to Prevent Waste of Time, Money, and Resources, and Business Harm.**

Ravin moved for a stay of discovery and the Rule 26(f) conference on the grounds that the dispute between the parties concerns a pure question of law that can be answered by an analysis of the unambiguous language in the parties' Agreement.  Because no discovery is needed to declare rights under a contract, it would be a manifest waste of time, money, and resources for the parties to engage in discovery before the Court rules on the instant motion— which will be outcome determinative of the entire case.  This conclusion applies with particular force here where the parties are competitors, and the exchange of competitively sensitive financial and business information carries with it a high degree of commercial risk.

TenPoint opposes Ravin's motion on the grounds that the act of filing a motion to dismiss

does not ordinarily result in an automatic stay of discovery.  TenPoint's argument misses the mark because Ravin has not moved for an automatic stay of discovery on the grounds that it filed a motion to dismiss.  Rather, Ravin moves on the grounds that the discovery is unnecessary, and is being pursued by TenPoint not for honest reasons, but to uncover confidential information from its leading competitor.  Moreover, there is no danger of any prejudice as a result of a stay, nor has TenPoint identified any prejudice.  Presumably, the parties have complied with their obligations to preserve any documents and information that may be relevant to this dispute.  If Ravin's Motion to Dismiss is denied, to the extent necessary, and with proper scope, the parties can move forward expeditiously with discovery at that time.  *See Miller v. Countrywide Home Loans*, No. 2:09-cv-0674, 2010 WL 2246310, at *3 (S.D. Ohio June 4, 2010) (granting motion to stay discovery where the plaintiff did not indicate any hardship he would suffer from a delay in discovery, and because documents at issue were being preserved and could be produced with little difficulty and expeditiously should the motions to dismiss be denied).  In circumstances similar to those present here, Ohio courts rule in favor of staying discovery.  *See N. Cent. Elec. Coop. Inc. v. Linde LLC*, No. 3:16-cv-1890, 2018 WL 2738878, at *3 (N.D. Ohio June 7, 2018) (granting motion to stay discovery pending resolution of motion to dismiss where "a successful motion to dismiss could significantly alter the landscape of the claims going forward, [and] any discovery completed now may soon prove to be unnecessary").  This Court should too, and Ravin's motion for a stay should be granted.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in its Opening Memorandum of Points and Authorities, Ravin respectfully requests that the Court grant its Motion to Dismiss and dismiss TenPoint's counterclaims in their entirety.

99533863.5 0056169-00059

**STOEL RIVES LLP**

Dated:  December 27, 2018

_s/Eric A. Bartsch_
Eric A. Bartsch (MN #243723)
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone:  (612) 373-8800
Facsimile:  (612) 373-8881
eric.bartsch@stoel.com

**ATTORNEYS FOR PLAINTIFF RAVIN
CROSSBOWS, LLC**

11

**CERTIFICATE OF SERVICE**

I certify that on the date set forth above, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

<u>s/*Eric A. Bartsch*</u>
Eric A. Bartsch

99533863.5 0056169-00059