# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RAVIN CROSSBOWS, LLC, | CASE NO. 5:18-cv-1729 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| HUNTER'S MANUFACTURING COMPANY, INC., d/b/a TenPoint Crossbow Technologies, | |
| DEFENDANT. | |

Before the Court is the motion of plaintiff Ravin Crossbows, LLC ("Ravin") to dismiss the counterclaims of defendant/counter-claimant Hunter's Manufacturing Company d/b/a TenPoint Crossbow Technologies ("TenPoint"). (Doc. Nos. 46/47 ["Mot."].) TenPoint has filed a memorandum in opposition (Doc. No. 51 ["Opp'n"]), and Ravin has filed a reply (Doc. No. 52 ["Reply"]). For the reasons set forth herein, the motion is denied.

## I. BACKGROUND[1]

Ravin and TenPoint are parties to a Patent License Agreement under which TenPoint licensed certain of its patents to Ravin. (Doc. No. 41, Counterclaim ["Countercl."] ¶ 6.) A copy of the Patent License Agreement is attached to the first amended complaint as Exhibit A, and is acknowledged by TenPoint in its counterclaim. (Doc. No. 32-1, Ex. A ["Agreement"]; Countercl. ¶ 6.) The Agreement provided, in relevant part, as follows:

> 2.1 <u>Royalty Payments</u>. For the license granted herein, Licensee [Ravin] shall pay to Licensor [TenPoint] a royalty of eight percent (8%) ("Royalty") of the net sales price for each Licensed Product manufactured, used or sold in the U.S., or

---
[1] Because the Court is addressing a motion to dismiss the counterclaims, the facts herein are mostly gleaned from the counterclaim; however, many of these same facts are also found in the first amended complaint (Doc. No. 32 ["FAC"]) and answer (Doc. No. 41 ["Answer"].)

> sold by Licensee anywhere in the world if manufactured in the U.S. In consideration of the royalty-free Cross-License Grant in Section 1.2 and a pre-paid, non-refundable Royalty payment of $250,000.00 US ("Pre-Paid Royalty") due within 10 days of the Effective Date, Licensor agrees to modify the Royalty to be (i) a fixed fee of $20.00 US for each Licensed Product manufactured in the U.S. and shipped anywhere in the world, less Excluded Units; and (ii) after the Pre-Paid Royalty is allocated to the Licensed Products, Licensee shall have the option to buy-out the Royalty for the balance of the Term for a one-time Royalty payment of $500,000.00 US, less any Royalties paid in excess of the Pre-Paid Royalty. As used herein, "Excluded Units" means Licensed Products that are returns, warranty replacements, write-offs, promotional units, including demonstration and evaluation units, donations, and sponsorship or pro-staff units.

(Agreement at 287.[2]) The Agreement further provided that "[r]oyalty payments are due quarterly with the payment being received by Licensor no later than forty-five (45) days at [sic] the end of each calendar quarter[,]" specifically, on May 15, August 14, November 14, and February 14. (*Id.* § 2.2.) The "Term" was defined as "commenc[ing] on the Effective Date [November __, 2015] and, unless terminated earlier [due to a material breach and failure to remedy], . . . continu[ing] until the last to expire of the Licensed Patents and Cross-Licensed Patents . . . ." (*Id.* § 6.1.)

In November or December of 2015, Ravin paid TenPoint the $250,000.00 pre-paid, non-refundable royalty in accordance with § 2.1 of the Agreement. (FAC ¶ 13; Answer ¶ 13.) On or about May 2, 2018, Ravin submitted to TenPoint a check in the amount of $257,120.00, claiming to exercise its buy-out right under § 2.1. (FAC ¶ 14; Countercl. ¶¶ 23–24.) TenPoint did not accept payment from Ravin, asserting that the buy-out option had already "lapsed and expired." (FAC ¶ 17; Countercl. ¶ 25.) In response, Ravin informed TenPoint (both through counsel) that the $257,120.00 payment included (a) $175,140.00 due for the royalties accruing during the First Quarter of 2018; and (b) $81,980.00 as "payment for the buy-out Royalty for the balance of the

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

Term." (Countercl. ¶ 26 & Ex. 3.) TenPoint eventually returned the check to Ravin, uncashed. (*Id.* ¶ 29.)

On July 25, 2018, Ravin filed its complaint based on diversity jurisdiction, which it later amended, seeking a declaratory judgment that its exercise of the early buy-out option in the Agreement was proper, lawful, and valid, and that it owed TenPoint no further royalty payments or royalty reports. This Court questioned whether the jurisdictional amount in controversy had been established and directed the parties to brief the matter. Ravin filed a brief, but TenPoint declined to do so. Thereafter, based solely on the unrefuted representations in Ravin's brief and accompanying declaration, the Court determined that, as pleaded, the amount in controversy was satisfied.

## II. DISCUSSION

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Although, ordinarily, matters outside the pleadings are not to be considered on a motion to dismiss, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss

3

into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### B. Analysis

The crux of the dispute between the parties rests on contract interpretation, in particular, on § 2.1 of their Agreement. Ravin claims it properly exercised its buy-out right under the Agreement, whereas TenPoint is of the view that Ravin's right had expired. Each party seeks a declaration in support of its respective positive. In addition, TenPoint claims Ravin breached the Agreement because it has not paid the required royalties; TenPoint seeks damages.

Ravin now moves for dismissal of TenPoint's counterclaims, asserting that "the plain and unambiguous language of the [Agreement] between [the parties] squarely contradicts TenPoint's counterclaims." (Mot. at 375.) By seeking dismissal of the counterclaims, Ravin is, in essence, seeking a ruling on the merits of these "dueling" actions for declaratory judgment.

The Court declines to address the merits of TenPoint's counterclaims at this juncture.

## III. CONCLUSION

For the reasons set forth herein, Ravin's motion to dismiss TenPoint's counterclaims (Doc. No. 46) is denied.

The Court will, by separate order, issue a Case Management Plan.

**IT IS SO ORDERED**.

Dated: August 7, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

4