UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:18-cv-1729 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HUNTER'S MANUFACTURING CO., | ) | **AND ORDER** |
| INC., d/b/a TenPoint Crossbow Technologies, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court are the objections (Doc. No. 138 ["Obj."]) of plaintiff, Ravin Crossbows, LLC ("Ravin") to an Order of the court-appointed Special Master (*see* Doc. No. 133 ["SM Order"]). Defendant Hunter's Manufacturing Co., Inc., d/b/a TenPoint Crossbow Technologies ("TenPoint") filed a response to the objections (Doc. No. 141 ["Response"]). For the reasons set forth herein, the objections are overruled in part and sustained in part.

**I.    Background**

On September 8, 2020, with the consent of the parties, the Court appointed a Special Master under Fed. R. Civ. P. 53 to perform the following tasks:

1. Review the third-party license agreements that are currently the source of a discovery dispute, [(Doc. No. 79 at PageID # 731-34, Doc. No. 80 at PageID # 746-49, Doc Nos. 100-101),] and determine which agreements, or portions thereof, should be disclosed to plaintiff by defendant, and under what conditions.

2. Determine if "[t]he Royalty charged to [Ravin Crossbows, LLC is] no greater than the Royalty charged to any third party for a license to all of the Licensed Patents" as required by § 2.5 of the parties' license agreement.

3. Determine whether the attorney for Hunter's Manufacturing Co., Inc., d/b/a TenPoint Crossbow Technologies, has a conflict of interest as addressed by the parties' briefing,

>    [(Doc Nos. 73-78, Doc. No. 79 at PageID # 734, Doc. No. 80 at PageID # 750-52, Doc. No. 82)].
>
> 4. Engage the parties in the mediation previously required by Court order (in accordance with the dispute resolution provisions of § 7.5 of the parties' license agreement), with the requirement that this entire process be completed by the end of the calendar year 2020.

(Doc. No. 117 at 1155 (citing Doc. No. 107).)

On November 23, 2020, the Special Master issued his order wherein, with the parties' prior agreement as to the procedure, he made several specific determinations regarding "an exchange of additional information that each party deemed necessary *to proceed directly to the mediation ordered by the Court*." (SM Order at 1236 (emphasis added).)[1] The Special Master noted that the parties had entered into a Stipulated Protective Order (Doc. No. 128) that provided for production of confidential information.

Beginning with the question of what materials TenPoint must produce to Ravin to facilitate mediation, the Special Master conducted an *in camera* review of both redacted and full versions of license agreements that TenPoint has with five of Ravin's competitors—Parker Compound Bows ("Parker"), Precision Shooting Equipment ("Precision"), Barrett Outdoors Bowtech ("Barrett"), SA Sports, LLC ("SA Sports"), and Bear Archery, Inc. ("Bear")[2]—all of which Ravin seeks from TenPoint. For purposes of mediation only, Ravin agreed to accept TenPoint's redactions of the Precision and Barrett license agreements, but not those of the other three.

The Special Master noted that the challenged redactions in the three agreements fall into two categories: (1) patent numbers and other descriptions of cross licenses from the licensees to

---

[1] Notably, the Patent License Agreement between the parties that is at issue in this case requires that any disagreement be mediated before being brought to a court. (*See* Doc. No. 104-1 at 1058 (§ 7.5); Doc. No. 98 at 980.)

[2] Initially, this Court had identified only the first four license agreements, but the Special Master's process surfaced the fifth.

TenPoint, and (2) settlement terms for alleged prior infringements of TenPoint's patents. (SM Order at 1238.) Ravin asserts only that it is entitled to removal of the redactions in the second category, which it claims will help it determine whether the royalty charged to Ravin is no greater than the royalty charged to any third party—a condition of the parties' license agreement.

The Special Master determined that these contested redactions "only relate to settlement terms and to the settlement amounts to be paid by the licensees for alleged, but disputed, past infringements." (*Id*. at 1239.) Of these types of terms, only "going forward license rates" were judged by the Special Master to be relevant and subject to disclosure by TenPoint to Ravin. The Special Master ruled: "Therefore, Ravin is entitled to copies [of] the requested license agreements, including the Bear license agreement, but TenPoint may produce those copies with redactions as to cross-license terms[3] and settlement terms in the form as previously produced to the Special Master for *in camera* review." (*Id*. (footnote added).)

Turning next to the question of what materials Ravin must produce to TenPoint to facilitate mediation, the Special Master noted: "The original dispute which began this case, and which remains central, is whether Ravin timely exercised its option to pay the balance of royalties, up to the $500,000 Royalty of Sec. 2.1 of the Patent License Agreement with TenPoint, to obtain a fully paid up license." (*Id*. at 1240.) Whether or not Ravin owes additional royalties depends upon whether it timely exercised its option. Ravin's sales, according to the Special Master, are relevant to each party's analysis of the "relative risks and potential benefits of pursuing this litigation and to have meaningful mediation[.]" (*Id*.) Therefore, the Special Master determined that "TenPoint is

---

[3] As noted below (*see* n.5), for purposes of mediation, Ravin is not objecting to redaction of cross-license terms.

entitled to reports of Ravin's sales to date in the same form as it provided prior to its claimed exercise of its option under Sec. 2.1 of the Patent License Agreement." (*Id.*)

## II.     Discussion

Under Fed. R. Civ. P. 53(f)(5), where a party objects to a Special Master's ruling on a procedural matter, such as the scope of discovery (or, in this case, the specific information that must be exchanged *in preparation for mediation*), the Court reviews the ruling only for abuse of discretion. This is similar to the scope of review of a district court's discovery orders by the circuit court. *See Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (where the district court stayed discovery pending resolution of a motion to dismiss or for summary judgment, but advised plaintiffs to seek whatever discovery they believed they needed to respond to the motion, which plaintiffs failed to do) ("Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined. When reviewing a district court's decision to limit discovery, we will intervene only if the decision was an abuse of discretion resulting in substantial prejudice." (citations omitted)); *see also In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (special master's ruling on scope of discovery is procedural, reviewed for abuse of discretion) (collecting cases).

The ruling of the Special Master currently before this Court on plaintiff's objections is a procedural matter.[4] Even the Special Master recognized that his rulings

> shall neither be deemed to be a waiver by either party of any right to seek additional discovery should the mediation in this case pursuant to the Court's order not be

---

[4] In it objections, Ravin asserted, without explanation, that the *de novo* standard of review in Fed. R. Civ. P. 53(f)(4) applies. (*See* Obj. at 1281.) *See also*, n.6, *infra*. On December 18, 2020, Ravin moved for leave to file a reply to TenPoint's opposition to its objections, articulating for the first time, *inter alia*, why it believes the *de novo* standard applies. (Doc. No. 142.) TenPoint opposed the motion for leave. (Doc. No. 143.) The motion for leave is denied. That said, even if the *de novo* standard were to apply, the outcome of this opinion would not differ.

4

>successful, nor used to prevent either party from asserting at trial or in any other proceeding that the disclosed information is not relevant. *Should the mediation fail*, the parties will be given an opportunity to further brief these issues for a final decision as mandated by the Court.

(SM Order at 1241 (emphasis added).)

In objection to the Special Master's Order,[5] Ravin challenges the ruling that "the complete, unredacted license agreements between [TenPoint] and [Parker, SA Sports, and Bear] need not be produced by TenPoint prior to any mediation." (Obj. at 1280.[6]) Ravin asserts that "[t]he rules of discovery entitle Ravin to the unredacted TenPoint license agreements with Parker, SA Sports, and Bear as well as the evidence of the third-parties' payments under the same." (*Id.*) As correctly pointed out in TenPoint's response, Ravin does not develop any argument as to its conclusory statement that it is entitled to evidence of third-party payments. (Response at 1357 ("Other than the introduction's conclusory demand for records of third-party payments, the Objections do not explain why the Order erred in not requiring disclosure of such records.").) The Court agrees and will not address this issue further. To the extent Ravin's conclusory statement relating to evidence of third-party payments might be construed as an objection, it is overruled.

Before addressing the substantive portion of Ravin's objections, the Court notes that, only in a footnote does Ravin "object" to the Special Master's order that it must produce its quarterly sales reports as it had been doing prior to its purported exercise of its buyout option. (Obj. at 1280

---

[5] "For the purposes of mediation only and without waiving any entitlement to seeking this information in discovery if mediation is unsuccessful, Ravin is not challenging the Special Master's Order insofar as it relates to any redactions addressing any third-party cross-license to TenPoint." (Obj. at 1281 n.3.)

[6] Ravin's footnote to this assertion recognizes the procedural (and narrow) nature of the Special Master's order designed only to equip the parties for mediation: "The identification of these particular agreements is in no way intended to be exhaustive of the materials Ravin would pursue in discovery, and Ravin reserves all rights to pursue additional discovery, including third-party discovery, to adduce other relevant information in support of its claims." (Obj. at 1280 n.1; *see also id.* at 1281 n.3.)

n.2.) But "arguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). Therefore, to the extent this footnote purports to be an objection, it is overruled.

Ravin argues that the most favored nation provision in its license agreement with TenPoint encompasses all royalty arrangements with third parties, including any settlement agreements and payments.[7] (Obj. at 1281.) It claims that § 2.5 of the parties' agreement "does not carve out lump sum payments or royalty arrangements established during or after the conclusion of any litigation nor is there any evidence that the parties intended for such a carve-out." (*Id.*) Ravin notes that TenPoint "has no credible basis to oppose producing the sought-after unredacted agreements *during discovery*," (*id.* at 1282 n.4 (emphasis added)), since they would be subject to the parties' Stipulated Protective Order, and that TenPoint's refusal in this regard "only prolongs movement to resolution[.]" (*Id.* at 1283.)

Ravin's position is supported by *Shatterproof Glass Corp. v. Libbey-Owens-Ford Co.*, 482 F.2d 317 (6th Cir. 1973), where a release was executed between LOF and an accused infringer that "provided for a payment of $400,000 for all claims of infringement of LOF's patents by the [accused infringer]." *Id.* at 321. The Sixth Circuit affirmed the district court's holding that a "release can, in certain circumstances, have the effect of and be construed as a license." *Id.* at 320 (citation omitted). According to *Shatterproof Glass*, when determining whether a party is receiving its most favored nation status as compared to a third party, "the specified [royalty] rate should not be the sole criterion by which to determine what was in fact the price paid for the license." *Id.* at 323. "[T]he full consideration paid by each licensee must be considered[,]" that is, the Court must

---

[7] As noted above, the Court will not address Ravin's undeveloped assertion regarding the actual payments made by third parties.

6

consider "the value of the consideration given in each instance[.]" *Id*. at 324. *See also Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.*, 105 F.3d 629, 633 (Fed. Cir. 1997) (construing the term "paying licensee" as "one who gives money for a license[]" and finding "no distinction between one who makes an up-front, lump-sum payment and one who makes continuing royalty payments").

The Court agrees with Ravin that it is entitled to production by TenPoint of unredacted royalty compensation information for the three agreements in dispute (Perkins, SA Sports, and Bear), subject only to these parties' Stipulated Protective Order and with any redactions that Ravin has specifically agreed to as described in the Special Master's Order (*e.g*., cross-license information). Without this additional information, Ravin will not be in a position to judge the merits, if any, of its claim that TenPoint has not honored Ravin's most favored nation status, and Ravin would be disadvantaged at mediation.

And TenPoint's threat that any further disclosure of the agreements is likely to trigger objections by the third parties, as well as motions to intervene and resulting significant delay, is unavailing. (*See* Response at 1357 n.1.) The mere fact that a third party might seek to intervene in a case that is already almost two-and-a-half years old does not guarantee that any such motion(s) would be granted. Any third-party's objection to disclosure is a matter between TenPoint and such third party and need not concern Ravin or, for that matter, this Court. The dispute before this Court relates to whether TenPoint violated Ravin's most favored nation status, and Ravin is entitled to facts relevant to that question as it enters into mediation.

Accordingly, this objection is sustained. TenPoint shall be required to produce all five third-party license agreements, subject to the "OUTSIDE ATTORNEYS' EYES ONLY"

7

provision of the parties' Stipulated Protective Order, and with only those redactions relating to cross-licenses that Ravin has already conceded are appropriate and unchallenged.

### III. Conclusion

For the reasons and in the manner set forth herein, Ravin's objections to the Special Master's Order of November 23, 2020 are overruled in part and sustained in part. To be clear, Ravin's objection to the Special Master's ruling #1 (SM Order at 1241) is sustained, but only with respect to redaction of settlement terms, not redaction of cross-license terms, in the Parker, SA Sports, and Bear patent license agreements; Ravin's objection to the Special Master's ruling #2 is overruled (as waived); the Special Master's rulings #3 through #5 were not challenged and are, therefore, accepted.

**IT IS SO ORDERED**.

Dated: December 29, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**