**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:18-CV-01729-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| HUNTER'S MANUFACTURING | ) | CARMEN E. HENDERSON |
| COMPANY, INC., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Local Civil Rule 72.1, to resolve Plaintiff's motion to hold Defendant in contempt for violating the stipulated protective order at ECF No. 128. (ECF No. 165). The parties briefed the matter (ECF Nos. 162, 163, 168, 169, 171, and 172) and the Court held a hearing on the motion on June 6, 2023. After requiring further briefing from the parties on the matter of sanctions, the Court held a second hearing on Plaintiff's fee petition on July 17, 2023. This Court hereby recommends that Plaintiff's motion to hold Defendant in contempt for violating the stipulated protective order at ECF No. 128 (ECF No. 163) be GRANTED and that Defendant be ordered to pay $39,613.33 to Plaintiff in sanctions.

I.      Background

On October 23, 2020, the parties negotiated, executed, and the Court entered a Stipulated Protective Order ("SPO") "to facilitate the exchange of confidential information between the parties." The SPO set forth which documents may be designated "Outside Attorneys' Eyes Only" (OAEO) as documents containing "highly sensitive commercial information, such as … financial information, including sales… the disclosure of which is likely to cause significant harm to . . . the

1

business or competitive position of the designating party." (ECF No. 128 at 13). Additionally, the SPO restricted the use of Confidential or OAEO information produced to prepare for mediation stating that such documents "produced in preparation for or during mediation shall be used only for mediation and shall not be used for any other purpose whatsoever (including any other aspect of this action)." (ECF No. 128 at 7).  In preparation for mediation with a Special Master, Plaintiff agreed to provide certain sales information and that such information would be designated as OAEO and that "the materials may be shown [to] three designated executives of Plaintiff who will be attend [sic] the mediation for the purposes of the mediation only." (ECF No. 146 (Fifth Status Report of Special Master))

In compliance with the agreement, on February 2, 2021, Plaintiff provided its protected sales information to Defendant. (ECF No. 163-7: Ex. G, Feb. 2, 2021 KMJ email to JS; ECF No. 163-4: Ex. H, Ravin Sales Information.) The cover correspondence as well as the documents were marked "OUTSIDE ATTORNEYS' EYES ONLY," "FOR MEDIATION PURPOSES ONLY," and stated that "Phil, Rick, and Steve Bednar may have access to this information for mediation purposes only." (ECF No. 163-7: Ex. G, Feb. 2, 2021 KMJ email to JS.). During mediation with the Special Master on February 10, 2021, the parties reached a confidential resolution. (See ECF Nos. 151, 154, 160.) The parties filed a Joint Proposed Stipulation of Dismissal with Prejudice, (ECF No. 158), which was entered by the Court on May 4, 2021. (ECF No. No. 159.) The SPO "remain[s] in force after dismissal." (ECF No. 128, SPO ¶ 14(a) at 1220.)

Despite the SPO, Defendant then "disclosed the designated information beyond the group expressly allowed by the SPO." (ECF No. 169 at 2). Defendant "is not contesting the SPO's violation[.]" (*Id.*).[1]

This Court held a contempt hearing on June 6, 2023. (*See* ECF No. 174 and 175). Without objection, the Court took judicial notice of the SPO. (ECF No. 175 at 12). Defendant again conceded that it violated the SPO by providing certain OAEO documents to persons other than the three individuals agreed to by Ravin. (*Id.* at 7). Mr. Phil Bednar, TenPoint's now President and CEO, testified on behalf of TenPoint. (*Id.* at 19-33). Mr. Bednar's testimony included the background for the reason and timing of the disclosure of the confidential information. (*See id.* at 19-26; *see also* ECF No. 169-9). Based on that testimony, and TenPoint's admission of the violation, this Court found by clear and convincing evidence that TenPoint blatantly disregarded its obligation under the SPO and should be held in contempt. (*Id.* at 35, 52).

Having concluded that TenPoint violated the SPO and should be found in contempt, this Court proceeded to hear argument from the parties regarding the proper remedies. Ravin's request was four-part: 1) the destruction of the confidential documents; 2) a declaration from Mr. Bednar detailing the dissemination of the confidential information, and that certain Ravin personnel be

---

[1] Ravin also moved to hold TenPoint in contempt for violating the SPO by retaining the confidential information for use outside of the mediation. (ECF No. 163 at 2). TenPoint argued that the information was covered by the duty to preserve relevant information for anticipated litigation and was expressly permitted by the SPO. (ECF No. 169 at 8). Ravin argued that the information fell outside the SPO's carveout. At the initial hearing, the parties presented evidence and the Court heard testimony from Mr. Philip Bednar as to this issue. TenPoint presented evidence that at the time of the mediation for which the confidential information at issue was provided, TenPoint had plans to pursue litigation against other non-parties and retained the information based on that intent under the provisions of the SPO. This Court found that Ravin failed to prove by clear and convincing evidence that TenPoint had violated the terms of the SPO by retaining the confidential information. (*See* ECF No. 175 at 35). However, because there is no dispute that TenPoint violated the SPO by distributing the protected information, this Report & Recommendation focuses on that violation.

allowed to view the declaration, unredacted; 3) reasonably attorney's fees and costs; and 4) an amended protective order be entered in Case No. 5:23-cv-598.

## II.  Civil Contempt Law

"Generally, civil contempt may be either intended to coerce future compliance with a court's order … or to compensate for the injuries resulting from the noncompliance." *In re Jaques*, 761 F.2d 302, 305–06 (6th Cir. 1985) (citations omitted); *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 595 n.5 (6th Cir. 1999). "A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly 'violated a definite and specific order of the court.' " *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quotation and brackets omitted)). After the moving party has established a violation by clear and convincing evidence, the non-moving party must show "categorically and in detail why he or she is unable to comply with the court's order." *Elec. Workers Pension Tr. Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (quotation and citation omitted).

## III.  Analysis

Ravin has established by clear and convincing evidence that TenPoint violated the SPO, which was known to them. TenPoint concedes that it knowingly violated the SPO by disclosing confidential information. (ECF No. 169 at 2, 8). Accordingly, the Court recommends that TenPoint be held in contempt and that the motion be GRANTED.

## IV.  Remedies

In its motion, Ravin requested the following remedies:

> • Ordering TenPoint to destroy all Ravin Protected Sales Information, including materials that were created from Ravin

4

Protected Sales Information, and providing a sworn declaration detailing the steps TenPoint took to accomplish the same. This is information that should have been returned or destroyed within 30 days of the dismissal of the 2018 DJ. (See Doc. No. 128 at 1220-21.)

• Ordering TenPoint to provide a sworn declaration detailing to whom and when Ravin's Protected Sales Information was disclosed and how it was used, which Ravin personnel is authorized to review.

• Awarding a monetary sanction, including reasonable attorneys' fees and costs related to bringing this Motion as well as those fees and costs incurred in negotiating the terms under which Ravin agreed to disclose its Protected Sales Information prior to the mediation. *See Am. Consol. Indus., Inc. v. Blasingim*, No. 1:19-CV-137, 2022 WL 17687491, at *27 (N.D. Ohio Dec. 15, 2022) ("Compensation of the injured party in a contempt proceeding often consist[s] of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt proceeding.") (citation omitted).

• Modifying the protective order in the 2021 Infringement matter in Case No. 5:23-cv-598 (2021 Infringement, Doc. No. 39) to preclude TenPoint from accessing any Ravin confidential information to prevent any future improper use and disclosure of Ravin's confidential information.

(ECF No. 163 at 14). The Court will address each of the requested remedies below.

A.  Destruction of Designated Confidential Documents

Initially, TenPoint opposed Ravin's requested remedy requiring the destruction of the designated confidential documents. (ECF No. 169 at 13). However, during the contempt hearing, TenPoint agreed that all confidential documents in its possession would be destroyed apart from those in the possession of its outside counsel. (ECF No. 175 at 9-10, 38). TenPoint agreed to reach out to the third-parties to whom the documents had been disclosed and inform them of the need to destroy the improperly disclosed documents. (ECF No. 175 at 39). Ravin accepted this remedy. (ECF No. 175 at 37-38). Accordingly, the Court recommends that all documents designated OAEO shall be destroyed by any person in possession of those documents other than TenPoint's outside

counsel. Regarding documents in the possession of outside parties, this Court recommends that TenPoint be ordered to claw back those documents.

    B.  Declaration from TenPoint Detailing the Improper Disclosures

    TenPoint provided a declaration from Mr. Phil Bednar addressing Ravin's request for a declaration explaining the disclosure of its designated information. (*See* ECF No. 169-9). The declaration purports to include facts surrounding the dissemination of the confidential information. Although the declaration was not labeled "For Attorney's Eyes Only" (*see* ECF No. 169-9), the parties have treated it as such and Ravin's counsel has apparently not yet shared the contents of the declaration with Ravin representatives (ECF No. 175 at 47). Ravin's counsel asserted that the declaration was insufficient to satisfy the requested remedy in the motion for contempt. (ECF No. 172 at 5-6). Ravin seeks an updated declaration from Mr. Bednar detailing his discussions with third parties relevant to what confidential information was disclosed. Additionally, Ravin argued that four of its representatives should be allowed to review the updated declaration provided by Mr. Bednar in order to determine its sufficiency. Ravin asserts it cannot know the extent of the harm caused by Mr. Bednar's disclosure until it knows the full breadth of what was disclosed and to whom and it cannot know that until its representatives have the ability to review Mr. Bednar's explanation. TenPoint seeks to restrict the declaration to OAEO as it contains sensitive information. This Court found that that because Mr. Bednar had blatantly and knowingly violated the SPO by disclosing confidential information it would not now shield TenPoint by designating the declaration as OAEO.

    Accordingly, this Court recommends that Mr. Bednar provide a detailed declaration explaining the extent of the disclosed information and that the detailed declaration will be shared unredacted with the following Ravin representatives: Mr. Grindle, Mr. Engstrom, Mr. Lester, and

Mr. Schindler. Additionally, this Court recommends that TenPoint be ordered to obtain declarations from the third parties with whom the information was shared explaining how that information was further disseminated and whether it has been returned, destroyed, or whatever else has happened with that information.

### C.  Attorneys' Fees, Costs and Expenses

Ravin requests its reasonable attorneys' fees related to (1) bringing this Motion, and (2) "negotiating the terms under which Ravin agreed to disclose its Protected Sales Information prior to the mediation." (ECF No. 163 at 14.) The second category seeks fees for preparing for the 2021 mediation. (ECF No. 175 at 54). Such fees, however, would have been incurred regardless of TenPoint's violation of the SPO. Accordingly, this Court will not recommend awarding Ravin attorney's fees for the second category. *See Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 108-110 (2017) (the complaining party may recover only the portion of his fees that he would not have paid but for the misconduct.).

However, this Court agrees with Ravin that is should recover reasonable fees related to bringing the motion for contempt in order to compensate Ravin for the injuries resulting from TenPoint's blatant violation. This Court ordered Ravin to submit a fee petition and allowed TenPoint to file an opposition. The parties fully briefed the attorney's fees, costs, and expenses and this Court heard further argument from the parties during the hearing on the fee petition. (*See* ECF Nos. 176-179, 181).

"The power to shape the appropriate remedy for a finding of contempt lies squarely within the discretion of the district court." *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 644–45 (6th Cir. 2015) (citing *Elec. Workers,* 340 F.3d at 382). "An award of attorney's fees and expenses

to a successful movant may be appropriate in a civil contempt proceeding." *Ehrman v. Guerrini*, No. 1:17 CV 230, 2020 WL 13469579, at *4 (N.D. Ohio Sept. 28, 2020) (citing *TWM Mfg. Co.*, 722 F.2d at 1273); *Walsh v. Express Auto & Tire, LLC*, No. 1:22MC00011, 2023 WL 272341, at *6 (N.D. Ohio Jan. 18, 2023) ("courts have noted that '[c]ompensation of the injured party in a contempt proceeding 'often consist[s] of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt proceeding.'' " (quoting *American Consolidated Industries, Inc. v. Blasingim*, 2022 WL 17687491 at * 27 (N.D. Ohio Dec. 15, 2022) (citations omitted)). "The remedial purposes of contempt suggest that a court may award reasonable attorneys' fees and costs as part of the losses the injured party sustains as a result of the violation of the court order." *Id.* Similarly, "[a] fine is an appropriate sanction, so long as it is either (1) payable to a person harmed by the contempt, based upon evidence of actual loss, or (2) payable to the court if the contemnor does not comply with the court order." *Id.* (quoting *Nettis Env't Ltd. v. IWI, Inc.*, 46 F.Supp.2d 722, 728 (N.D. Ohio 1999) (citation omitted)). The court must use the "least possible power adequate to the end proposed." *Id.*

    1. Hearing

    This Court held a hearing regarding Ravin's Fee Petition (ECF No. 176) on July 17, 2023. (ECF No. 181). At the hearing, Ravin rested on the submission into evidence of the declaration of Attorney Jelechick, its attorney fee and expense invoices, and The Ohio State Bar Association's publication *The Economics of Law Practice in Ohio in 2019, A Desktop Reference* (ECF No. 176-1) ("OSBA Survey"), all of which were also attached to the fee petition and supplemental documentation. (*See* ECF No. 181 at 4-11).

    TenPoint objected to the fee invoices as they contained numerous redactions, which Ravin argued were attorney client privilege. This Court reviewed the unredacted documents and

8

overruled TenPoint's objection.  The Court explained that although billing records are generally not privileged, specific descriptions of the work done, specific research for example, reveal litigation strategy and that is privileged. (ECF No. 181 at 20-21); *see Evenflo Co. v. Hantec Agents Ltd.*, No. 3:05-CV-346, 2006 WL 2945440, at *4 (S.D. Ohio Oct. 13, 2006) ("In this case, the invoices reveal the specific nature of the services provided. They are, therefore, privileged documents."); *see also Avery Outdoors LLC v. Outdoors Acquisition Co., LLC*, No. 16-CV-2229-SHL-TMP, 2016 WL 10519113, at *4 (W.D. Tenn. Nov. 30, 2016). Upon review of the redacted billing records, this Court found that the redactions contained specific descriptions of the work performed and were, thus, properly redacted.

TenPoint also objected to Attorney Jelenchick's declaration as inadmissible hearsay. This Court overruled TenPoint's objection because the rules of evidence do not apply in fee hearings. This Court explained that although attorney's fees should not be awarded without providing the potentially liable party notice and an opportunity to be heard, a full evidentiary hearing is not required. *Hill v. Univ. Fid. L.P.*, No. 5:16-CV-2957, 2019 WL 1206884, at *3 (N.D. Ohio Mar. 14, 2019) ("a full evidentiary hearing may not be required before the court imposes sanctions, so long as the court provides the party the opportunity to be heard.") (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008); *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774–75 (6th Cir. 1998) ("It is apparent in this circuit, as well as others, that when imposing sanctions, a full evidentiary hearing is not required.")). Here, the undersigned allowed both parties to submit briefs and provided an opportunity for each side to present any additional evidence.

Following Ravin's submission, TenPoint proffered challenges to Attorney Jelenchick's declaration and her assertion that the fees were reasonable. TenPoint then called Attorney Gordon D. Woolbert, II, a partner at Stark & Knoll Co., LPA, as an expert on the reasonableness of attorney

fees in the Northern District of Ohio. Attorney Woolbert's hearing testimony was substantially similar to his declaration. (See ECF No. 181 ta 60-87 (direct examination), 88-93 (cross examination). Attorney Woolbert opined that a combined 60 hours is reasonable for the Contempt Motion, the Reply, and the Fee Petition. (*See* ECF No. 177-2). Woolbert opined that "it is unreasonable to have four individuals (three of whom are lawyers) researching the law on a contempt motion. At most, two lawyers should have been used, as using more creates duplication and inefficiency." (*Id*.) He further opined that" the underlying contract dispute between the parties can competently and perhaps best be handled by a commercial/business litigator with some experience with stipulated protective orders. An intellectual property litigator is unnecessary"; "a reasonable rate for senior counsel competent for this type of work is $350/hour. A rate over $375/hour (as the outer limit) is excessive;" "a reasonable rate for an associate competent for this type of work is $200/hour. A rate over $225/hour (as the outer limit) is excessive;" and "a reasonable rate for a legal assistant competent for this type of work is $125/hour. A rate over $150/hour (as the outer limit) is excessive." (*Id*.). Finally, Attorney Woolbert opined "that any total fee in excess of $25,000.00 is unreasonable for the work reflected on the bills of Ravin's counsel." (*Id*.). Attorney Woolbert's declaration did not take into consideration the amount of time spent by Ravin's attorneys after the Fee Petition. (*See id*.).

The parties then made their closing arguments. After which this Court took the matter under advisement.

2.   Reasonable Attorney Fees

"A reasonable attorney fee is calculated by the lodestar method." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct.

1933, 76 L.Ed.2d 40 (1983)). "The lodestar is 'the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate.' " *Id.* (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). "The award-seeking party should submit evidence of the hours worked and the rates sought". *Id.* If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* "In determining hours, a court must 'exclude from this initial fee calculation hours that were not reasonably expended.' " *Id.* (citing *Hensley*, 461 U.S. at 434) (additional citation and internal quotation marks omitted). "Counsel are expected to 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.' " *Id.* (quoting *Hensley*, 461 U.S. at 434).

Ravin requests $106,810.20 in fees and $1,839.92 in costs and expenses reportedly incurred pursuing this motion for contempt. (ECF No. 179 at 2). The fees are broken down as follows: $37,620 for lead counsel, Kadie M. Jelenchick (57 hours x $660 per hour); $58,954.50 in fees for senior counsel, Michelle A. Moran (119.1 hours x $495 per hour); $10,060.20 in fees for associate, Gabriella Salek (27.6 hours x $364.50 per hour); and $175 for Sean Gasser, research librarian (1 hour x $175 per hour). (*Id.*).[2]

First, the amount of time Ravin's attorneys spent pursuing the contempt order for TenPoint's violation was unreasonable. Ravin provided no evidence or argument as to the reasonableness of the time spent in investigating, researching, or pursuing TenPoint's violation of

---

[2] It is unclear whether Ravin withdrew its request for fees for the time spent by Mr. Gasser. In its Reply, Ravin noted that "TenPoint's argument that Mr. Gasser, a librarian with 25 years of experience, should be valued at less than half of a new attorney is meritless. However, given Mr. Gasser's limited role, Ravin is willing to forgo recovery of his $175.50 in billings." (ECF No. 178 at 7, n. 5). However, Mr. Gasser's time was included in each of the requests, including the second supplemental declaration filed in support of the Fee Petition. (*See* ECF No. 179). Accordingly, it does not appear that Ravin formally withdrew its request for Mr. Gasser's fees.

the SPO. Instead, Ravin simply states that "due to TenPoint's blatant violation ... and this Court's recommendation of an order of contempt regarding the same, *the amount of work performed was reasonable and necessary and justifies the hours spent by Ravin's attorneys.*" (ECF No. 176 at 3). In response, TenPoint argued that Ravin's counsel overworked the file and that the amount of hours spent was unreasonable. TenPoint raised concerns over extensive research performed by experienced attorneys, internal conferences, and the length of time spent drafting and revising the documents. In his testimony and in his declaration, Attorney Woolbert opined that based on his knowledge and experience, 1) 32 hours is a reasonable amount of time to spend on researching, analyzing, drafting, preparation of supporting materials, and finalizing the Motion for Contempt; 2) 16 hours is a reasonable amount of time to spend on Reply in support of the motion for contempt; and 3) 12 hours is a reasonable amount of time to spend on the Fee Petition. (ECF No. 177-2 at 2-4). Attorney Woolbert was unable to opine as to the time spent by Ravin's counsel (approximately 19.3 hours) for other tasks including negotiations, communications with the client or opposing counsel, preparation for the hearing, participating in the hearing, etc. (*Id.* at 4). Attorney Woolbert offered no opinion as to the reasonableness of the amount of time Ravin's counsel spent on its Reply or supplement to the Fee Petition, in preparation for the Fee Petition hearing, or in attending the Fee Petition hearing. On cross examination, Attorney Woolbert stated that he had not reviewed the hour rates or time spent by TenPoint in defending the instant motion.

This motion practice was staffed by Kadie Jelenchick, a partner with nearly 18 years' legal practice experience, who charged Ravin for a total of 57 hours; Michelle A. Moran, senior counsel with approximately 14 years of legal practice experience, who charged Ravin for a total of 119.1 hours; Gabriella Salek, an association with seven months of experience, who charged Ravin for a total of 27.6; and Sean Gasser, a research librarian with 25 years of librarian experience, who

charged Ravin for a total of 1.0 hours. The Court finds that Ravin's attorneys' 204.7 combined hours were excessive for such a straightforward, largely uncontested issue.

Ravin's billing records do not shed light on why its counsel spent over 200 hours on an issue that was largely uncontested. When given an opportunity at the hearing to explain the reasonableness of the time spent, Ravin rested on its submissions and Attorney Jelenchick's self-serving declaration that the time spent was reasonable. This Court notes that Ravin could have mitigated its fees had it reached out to TenPoint when it first discovered the violation in April. Instead, Ravin notified counsel for TenPoint of the violation at 10:45 PM on May 2nd and demanded a response before May 5th. (ECF No. 169-6). The evidence shows that once notified, TenPoint immediately investigated the matter and, when the violation was discovered, admitted to the violation and attempted to work with Ravin's counsel toward a solution. (ECF No. 169-6, 169-7).

After review of the parties submissions and the evidence presented at the hearing, this Court recommends that 91 hours is a reasonable combined amount of time to have spent pursuing TenPoint's violation of the SPO: 32 hours on the 14-page motion for contempt and motion for leave to file under seal (ECF Nos. 161, 162, and 163); 16 hours on the 7-page reply in support of the motion for contempt (ECF Nos. 170, 171, and 172); 5.5 hours preparing for an attending the one-and-a-half hourlong contempt hearing; 12 hours on the Fee Petition (ECF No. 176); 5 hours on the reply and supplemental supporting declaration (ECF Nos. 178 and 179); 10.5 hours preparing for an attending the five-hour hearing on the fee petition; and 10 hours of miscellaneous time spent on the case. In reaching this conclusion, this Court has considered Attorney Jelenchick's affidavit, the fee invoices, the opinion of Attorney Woolbert – the only expert evidence submitted as to reasonableness of the time spent, the specialties and experience of Ravin's counsel, and the

complexity of the matter. The motion for contempt was only fourteen pages long consisting of mostly background information. Similarly, the reply was barely seven pages long and followed TenPoint's admission of a violation. This Court agrees with Attorney Woolbert that each document, along with their supporting documents, could have been completed in 32 hours and 16 hours, respectively. The Court also agrees with Attorney Woolbert that 12 hours is a reasonable amount of time to spent on the six-page Fee Petition and its supporting documents. Ravin presented no new evidence at the fee hearing, thus this Court finds that 5 ½ hours is reasonable amount of time to prepare for the hearing. Finally, given the simple nature of the matter, ten hours of miscellaneous time on the case, including client communications, is reasonable.

Second, the hourly rates requested by Ravin's counsel are also unreasonable in the Northern District of Ohio. "This circuit uses the 'community market rule' to calculate a reasonable billing rate." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (quoting *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)). Under the community market rule, "the billing rate 'should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation.' " *Id*. (quoting *Hadix* 65 F.3d at 535–36; *see also, e.g., Gonter v. Hunt Valve Co*., 510 F.3d 610, 618 (6th Cir. 2007)). "The burden is on the lawyer seeking fees to submit evidence— 'in addition to the attorney's own affidavits'—showing that the requested rate is reasonable." *Id.* (quoting *Blum*, 465 U.S. at 895 n.11).

Ravin seeks to recover Attorney Jelenchick's fees at a rate of $660 per hour; Attorney Moran's fees at a rate of $495 per hour; Attorney Salek's fees at a rate of $364.50 per hour; and Mr. Gasser's fees at a rate of $175 per hour. In support of the reasonableness of its fees, Ravin

submitted the affidavit of lead counsel (ECF No. 176-2) and the OSBA Survey".[3]  Ravin used the OSBA Survey's 95[th] percentile rates "due to the data being several years old" in arguing that 1) "in Ohio firms with more than 50 attorneys charge an hourly rate of $610;" 2) "partners in Ohio firms with more than 8 partners charge an hourly rate of $600;" 3) "attorneys in Downtown Cleveland charge an hourly rate of $595 [ ], attorneys in Suburban Cleveland charge an hourly rate of $425 [ ], and attorneys in Akron charge an hourly rate of $350;" and 4: "intellectual property lawyers in Ohio charge $595." (ECF No. 176 at 6).  Although these comparison rates appear relevant in determining the reasonableness of the rate charged by Attorney Jelenchick – a partner in a law firm of over 1,100 who specializes in intellectual property – no similar rates were provided by Ravin for comparison with respect to the remaining attorneys and law librarian whose fees are in dispute. Instead, such comparisons were left to the determination of the Court. Nonetheless, this Court reviewed the entirety of the OSBA Survey at ECF No. 176-1 and compared the relevant information with the information provided for Attorneys Jelenchick, Moran, and Salek, as well as law librarian Mr. Gasser.

In its opposition to the reasonableness of the hourly fees, TenPoint offered the Declaration of Gordon D. Woolbert, II – who is a partner at Stark & Knoll Co., LPA with over 25 years of commercial and business litigation experience in the Northern District of Ohio (ECF No. 177-2, 177-3) – and argued that the Court should compare the OSBA survey's median rates for all attorneys– not merely intellectual property attorneys – in Akron, Ohio, where this case is located

---

[3] Ravin also cites to the $500 per hour rate paid by the parties to the special master in resolving the matter two years ago as support for the reasonableness of the hourly rates. However, this Court finds that the rates of the special master engaged in negotiating a settlement are irrelevant to the rates charged by the attorneys working on a motion for contempt.

and reduce the requested fees to $350 per hour or less for Attorneys Jelenchick and Moran, $200 per hour or less for Attorney Selek, and $115 per hour for Mr. Gasser.

Typically, courts look to the median hourly rate when using the OSBA Survey. *MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-CV-581, 2023 WL 2768190, at *2–3 (S.D. Ohio Apr. 4, 2023*), report and recommendation adopted*, No. 2:21-CV-581, 2023 WL 2974525 (S.D. Ohio Apr. 17, 2023). However, as several years have passed since the data underlying this 2019 report was collected, the Court references the 75th percentile hourly rates to account for rate increases in the interim. The OSBA survey reflects that, at the 75th percentile, attorneys in Ohio firms with more than 50 attorneys charge an hourly rate of $475; partners in Ohio firms with more than 8 partners charge $425; attorneys in Ohio with both 11 to 15 and 16 to 25 years of experience charge $300, and those with 1 to 2 years of experience charge $208; attorneys in Downtown Cleveland charge $395; corporate/business attorneys charge $325; and intellectually property lawyers in Ohio charge $420.

In light of these points of reference, and in consideration of TenPoint's expert evidence of the prevailing market rates, the undersigned finds that downward adjustments to some of Ravin's counsel's billed rates are appropriate. The Court finds the following rates are appropriate: $500 per hour for Attorney Jelenchick; $425 for Attorney Moran; $208 per hour for Attorney Selek; and $115 per hour for Mr. Gasser. These rates take into consideration the evidence submitted by both parties as to the reasonableness of the requested rates, including the years and specialized

experience of the attorneys, the OSBA Survey charts, the market rates in the Northern District of

Ohio, and Attorney Woolbert's opinion.[4]

Accordingly, the lodestar is $37,773.41:

|  | Requested Hours | % of Total Hours | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|---|---|
| Jelenchick | 57 | 27.846 | 25.34 | $500 | $12,670 |
| Moran | 119.1 | 58.182 | 52.94 | $425 | $22,499.50 |
| Salek | 27.6 | 13.48 | 12.27 | $208 | $2,552.16 |
| Gasser | 1 | .489 | .45 | $115 | $51.75 |
| Total | 204.7 |  | 91 hours |  | $37,773.41 |

"Once the lodestar is established, a district court, in consideration of other relevant factors,

may adjust the fee award upward or downward to achieve a reasonable result." *Harper v. City of*

*Cleveland*, No. 1:16-CV-2972, 2020 WL 127683, at *7 (N.D. Ohio Jan. 10, 2020) (citing *Geier v.*

*Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933))

"Those considerations may include, among other things, the factors first articulated in *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)." *Echols v. Express Auto, Inc.*,

No. 20-1706, 2021 WL 2099238 (6th Cir. May 25, 2021).

TenPoint seeks to further adjust the lodestar downward arguing that Ravin was not harmed

by the violation of the SPO. The undisputed evidence shows that TenPoint distributed confidential

information to parties outside this litigation and did so for its own advantage. TenPoint did not

---

[4] Further support for this Court's determination of reasonable hourly rates can be found at *MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-CV-581, 2023 WL 2768190 (S.D. Ohio Apr. 4, 2023), *report and recommendation adopted*, No. 2:21-CV-581, 2023 WL 2974525 (S.D. Ohio Apr. 17, 2023) (finding a reasonable rate of $500 for Attorney Jelenchick and $465 for Attorney Moran).

produce any evidence that it had clawed back or otherwise discovered whether this information had been further distributed. Contrastingly, Ravin argued that the amount of harm is unknown at this point as it is unclear how far the confidential information travelled once it left TenPoint's hands. Moreover, "harm" includes the reasonable amount Ravin had to spend pursuing the motion for contempt and the fee petition. Accordingly, the Court declines to recommend a downward adjustment to the lodestar.

        3.   Costs & Expenses

Ravin requests $1,839.92 for costs and expenses through July 11, 2023, related to its pursuit of TenPoint's violation of the SPO. (See ECF No. 176-4, 179-1 at 9). The expenses included counsel's air travel from Milwaukee, WI to Pittsburg, PA for the contempt hearing, one-night hotel stay, internet, car rental, parking, tolls, and court reporter fees for the preparation of the transcript of the hearing. TenPoint argues that there was no need for out-of-state counsel nor the transcript of the contempt hearing, thus these expenses should not be allowed. This Court disagrees.

Upon review of the expenses submitted by Ravin, this Court finds that its requested costs and expenses were incident to the provision of legal services necessary to pursue contempt sanctions against TenPoint for its violation of the SPO. TenPoint argues that Attorney Jelenchick's specialization in intellectual property litigation was not necessary and, accordingly, local counsel skilled in business or commercial law would have been able to handle the matter thereby eliminating the travel costs associated with attending the hearings. However, Attorney Jelenchick entered an appearance in this case well before the effective date of the underlying SPO. It is not unreasonable or surprising that Attorney Jelenchick would continue to handle this matter in the event of a violation of that SPO. The Court agrees, however, that the matter did not necessarily

require the expertise of an intellectual property specialist and took that into consideration by recommending an hourly rate of $500.

The undersigned finds Ravin's expenses and costs to be reasonable and recommends that the Court award Ravin its incidental expenses and costs in the amount of $1,839.92.

D.  Modification of the protective order in Case No. 5:23-cv-598

In its final requested remedy, Ravin asks that the Court modify the protective order in the 2021 infringement matter in Case No. 5:23-cv-598 "to preclude TenPoint from accessing any [of] Ravin['s] confidential information [and] to prevent any future improper use and disclosure of Ravin's confidential information." (ECF No. 163 at 14). TenPoint argues that this Court does not have the authority to "reach over" and dictate matters in another case.

To the extent Ravin seeks to eliminate TenPoint's access of Ravin's previously disclosed confidential information, this request has been dealt with by the parties' agreement that all OAEO documents would be destroyed other than those kept by outside counsel. Accordingly, this portion of Ravin's request is moot.

Regarding the remainder of Ravin's request to modify a protective order in a separate 2021 infringement matter, this Court will not recommend that any action be taken. This Court's understanding of the SPO was that certain confidential documents may be designated for "Outside Attorneys' Eyes Only". For the purpose of mediation in 2021, Ravin agreed to amend the OAEO designation of certain sales information to allow three TenPoint employees, including Mr. Bednar, to view the documents. Ravin believed that those confidential documents were to be destroyed by TenPoint at the conclusion of mediation; TenPoint, however, retained them, purportedly because of the SPO's authorization to retain information necessary for anticipated litigation. This confidential sales information was later shared by Mr. Bednar to third parties, which is the subject

of the current motion before the court. This Court recommends – and the parties have agreed – that the confidential sales information be destroyed by TenPoint, clawed back from the third parties, and only retained by outside counsel. This recommendation returns the shared sales information to the designation of "Outside Attorneys' Eyes Only" in compliance with the SPO. This Court is not aware of any other OAEO information that is in possession of TenPoint. This Court's recommendation removes TenPoint's access to the shared sales information. Accordingly, the SPO already controls the OAEO information and this Court is unaware of what extra order is needed or available to preclude TenPoint from using or accessing the OAEO designated material.

Ravin's request to enjoin TenPoint from opposing any motion to amend the protective order in the 2021 litigation is premature. This request is based purely on the speculation that TenPoint will ignore the SPO and this Court's order in the future. Should the District Court adopt this Court's recommendation, TenPoint will destroy the sales information that was provided by Ravin during the 2021 mediation process and such information will be retained by TenPoint's outside counsel only. Based on TenPoint's purportedly sincere apology, its agreement to destroy all OAEO information (other than that in the possession of outside counsel), and this Court's recommendation that TenPoint be held in contempt and pay a fine of nearly $40,000 to Ravin for its violation, this Court believes that TenPoint has learned its lesson and that it will follow the SPO and orders of the Court.

V.      Conclusion

For the above stated reasons, this Court recommends that Ravin's motion (ECF No. 163) be GRANTED and that TenPoint be found in contempt for its violation of the SPO. As a sanction for its blatant violation of the SPO, this Court recommends that TenPoint be ordered to pay Ravin $39,613.33.

Dated: August 7, 2023

                                     *s/Carmen E. Henderson*
                                     Carmen E. Henderson
                                     United States Magistrate Judge

_____

### OBJECTIONS

      Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).

21