UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAVIN CROSSBOWS, LLC, | ) | CASE NO. 5:18-cv-1729 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| HUNTER'S MANUFACTURING | ) | |
| COMPANY, INC., d/b/a TenPoint Crossbows | ) | |
| Technologies, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Carmen E. Henderson (Doc. No. 182) recommending that this Court grant the motion of plaintiff Ravin Crossbows, LLC ("Ravin" or "plaintiff") to hold in contempt defendant Hunter's Manufacturing Company, Inc., d/b/a TenPoint Crossbow Technologies ("TenPoint" or "defendant") (Doc. No. 162 (Redacted Motion); Doc. No. 163 (Sealed Motion)[1]) and, further, that this Court grant Ravin's petition for attorney's fees and expenses (Doc. No. 176[2]) and order TenPoint to pay to Ravin $39,613.33 as a sanction.

Ravin filed its notice (Doc. No. 183 (Notice)) that, although it disagrees with the R&R, it will not object, but asks the Court to adopt the R&R in full and to set deadlines for TenPoint's compliance.

---

[1] TenPoint filed its opposition to Ravin's motion for contempt (Doc. No. 168 (Redacted Opposition); Doc. No. 169 (Sealed Opposition)) and Ravin filed a reply (Doc. No. 171 (Redacted Reply); Doc. No. 172 (Sealed Reply)). All references herein are to the sealed documents.

[2] TenPoint filed its opposition to the fee petition (Doc. No. 177 (Opposition)) and Ravin filed a reply (Doc. No. 178 (Reply)).

TenPoint filed its objections to the R&R (Doc. No. 185 (Redacted Objections); Doc. No. 187 (Sealed Objections)), and Ravin filed its response to the objections (Doc. No. 188 (Response)).

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters properly raised in the objections. For the reasons set forth herein, this Court overrules TenPoint's objections to Magistrate Judge Henderson's R&R and adopts the R&R in its entirety.

**I.    Background**

This case, which has been settled and closed since May 4, 2021 (*see* Doc. No. 159 (Stipulation and Order of Dismissal)), has a long history. The Court will recount herein only enough of the factual and procedural background to place the instant decision in context.

On September 8, 2020, at the parties' joint request, this Court appointed a special master to resolve various issues and to conduct a mediation. (*See* Doc. No. 117 (Stipulated Order for Appointment of Special Master).) To facilitate the mediation, on October 23, 2020, the parties entered into a Stipulated Protective Order ("SPO"). (Doc. No. 128.) The SPO provided that certain documents could be designated as "OUTSIDE ATTORNEYS' EYES ONLY" ("OAEO") if they contained "highly sensitive commercial information, such as . . . financial information, including sales . . . , the disclosure of which is likely to cause significant harm . . . to the business or competitive position of the designating party." (*Id*. at 3[3] ¶ 4.) The SPO also restricted the use of all "Confidential" or "OAEO" documents "produced in preparation for or during mediation[,]" stating that such documents "shall not be used for any other purpose whatsoever (including any other aspect of this action)." (*Id*. at 7 ¶ 6(f).)

---

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

In preparation for mediation with the special master, Ravin agreed to provide certain sales information, which was designated as OAEO. The parties also agreed that these materials "may be shown to the three designated executives of [Ravin] who will be attend[ing] the mediation for the purposes of the mediation only." (Doc. No. 146 (Fifth Status Report of Special Master), at 1.)

On February 2, 2021, Ravin complied with the required disclosure, providing TenPoint with Ravin's relevant protected sales information. (*See* Doc. No. 163-7 (Ex. G).) The cover correspondence reiterated that the documents produced were marked "OUTSIDE ATTORNEYS' EYES ONLY[,]" "FOR MEDIATION PURPOSES ONLY[,]" and that "Phil, Rick, and Steve Bednar may have access to this information for mediation purposes only." (*Id.*)

A mediation session was conducted on February 10, 2021; with the assistance of the special master, a settlement was negotiated between the parties. Ultimately, on May 4, 2021, this Court approved the parties' jointly proposed stipulation of dismissal with prejudice and entered the dismissal order. (*See* Doc. No. 159.) Under the terms of the SPO, it "remain[ed] in force after dismissal[.]" (Doc. No. 128 ¶ 14(a).)

On December 17, 2021, Ravin filed a wholly unrelated patent infringement case against TenPoint in the United States District Court for the District of Nevada, which is TenPoint's state of incorporation. TenPoint filed a motion to transfer venue to this district. While that motion was pending, the Nevada court issued a scheduling order and the parties began discovery. On March 17, 2023, the Nevada court transferred the case to this district, where it was assigned to the undersigned judge. *See Ravin Crossbows, LLC v. Hunter's Manufacturing Company, Inc.*, Case No. 5:23-cv-598 ("the infringement matter").

During the process of preparing for scheduled depositions in the infringement matter, Ravin's counsel discovered that TenPoint had improperly disclosed information made available to

3

it under the SPO in the instant case. Ravin moved to hold TenPoint in contempt for violating the SPO and sought sanctions in the form of attorney's fees and costs for TenPoint's alleged contempt.

The magistrate judge conducted a hearing on the contempt motion on June 6, 2023. (*See* Doc. No. 175 (Sealed Transcript).) She conducted an additional hearing on July 17, 2023 to address Ravin's request for sanctions. (*See* Doc. No. 181 (Sealed Transcript).)

In particular, as outlined in the R&R, Ravin sought the following relief:

- Ordering TenPoint to destroy all Ravin Protected Sales Information, including materials that were created from Ravin Protected Sales Information, and providing a sworn declaration detailing the steps TenPoint took to accomplish the same. . . .

- Ordering TenPoint to provide a sworn declaration detailing to whom and when Ravin's Protected Sales Information was disclosed and how it was used, which Ravin personnel is authorized to review.

- Awarding a monetary sanction, including reasonable attorneys' fees and costs related to bringing this Motion as well as those fees and costs incurred in negotiating the terms under which Ravin agreed to disclose its Protected Sales Information prior to the mediation. . . .

- Modifying the protective order in the 2021 Infringement matter in Case No. 5:23-cv-598 (2021 Infringement, Doc. No. 39) to preclude TenPoint from accessing any Ravin confidential information to prevent any future improper use and disclosure of Ravin's confidential information.

(Doc. No. 182, at 5 (citing Doc. No. 163, at 14).)

The R&R addressed each of the four requests in turn and recommended as follows:

- *Destruction of Designated Confidential Documents:* "[T]he Court recommends that all documents designed OAEO shall be destroyed by any person in possession of those documents other than TenPoint's outside counsel. Regarding documents in the possession of outside parties, this Court recommends that TenPoint be ordered to claw back those documents." (*Id.* at 5–6.)

- *Declaration from TenPoint Detailing the Improper Disclosures:* "[T]his Court recommends that Mr. Bednar provide a detailed declaration explaining the extent of the disclosed information and that the detailed declaration will be

4

shared unredacted with the following Ravin representatives: Mr. Grindle, Mr. Engstrom, Mr. Lester, and Mr. Schindler. Additionally, this Court recommends that TenPoint be ordered to obtain declarations from the third parties with whom the information was shared explaining how that information was further disseminated and whether it has been returned, destroyed, or whatever else has happened with that information." (*Id.* at 6–7.)

- *Attorneys' Fees, Costs and Expenses:* "[T]he lodestar is $37,773.41 . . . [and] the Court declines to recommend a downward adjustment to the lodestar. . . . The undersigned finds Ravin's expenses and costs to be reasonable and recommends that the Court award Ravin its incidental expenses and costs in the amount of $1,839.92." (*Id.* at 17–18, 19.)

- *Modification of the protective order in Case No. 5:23-cv-598:* "This Court's recommendation removes TenPoint's access to the shared sales information. Accordingly, the SPO already controls the OAEO information and this Court is unaware of what extra order is needed or available to preclude TenPoint from using or accessing the OAEO designated material." (*Id.* at 20.)

TenPoint "is not contesting the SPO's violation or making any excuses therefor." (Doc. No. 169, at 2 (bolding and underlining omitted).)[4] TenPoint's objections address the R&R only as to its attorney's fees sanction, raising no challenge to any other portion of the R&R. (*See* Doc. No. 187, at 2 ("Because TenPoint believes that the Magistrate Judge erred on certain aspects related to the attorneys' fees sanction, TenPoint respectfully files these objections.").)

---

[4] The motion for contempt claimed that TenPoint had violated the SPO by both disclosing/distributing (or "using") confidential information beyond the group expressly allowed by the SPO *and* by retaining (or "maintaining") confidential information after the mediation had concluded. It is only the former that TenPoint has not contested. As to the latter, TenPoint had argued that "the information was covered by the duty to preserve relevant information for anticipated litigation and was expressly permitted by the SPO[,] . . . [whereas] Ravin argued that the information fell outside the SPO's carveout." (Doc. No. 182, at 3 n.1 (citation omitted).) On June 6, 2023, after hearing the parties at some length on the matter of retention of documents (Doc. No. 175 (Transcript (6/6/2023)), at 7–35), the magistrate judge found that Ravin had failed to prove by clear and convincing evidence that TenPoint had violated the SPO by maintaining (and not destroying) the confidential information. (*Id.* at 35.) No one, including Ravin, has challenged this conclusion of the magistrate judge and, therefore, this Court considers it a settled matter that need not be addressed herein.

**II.    Legal Standard**

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); LR 72.3(b) (indicating that any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). Failure to file objections constitutes a forfeiture and failure to file *specific* objections may be either a forfeiture or a waiver. *Harris v. Aramark Corr. Servs., LLC*, No. 20-3343, 2021 WL 7543808, at *1 n.1 (6th Cir. Dec. 27, 2021) (citing *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (clarifying that "[w]aiver is affirmative and intentional, whereas forfeiture is a more passive failure to make the timely assertion of a right." (quotation marks and citation omitted))); *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citation omitted)).

After de novo review of the matters specifically raised by way of objection, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. Discussion

#### A. Uncontested Motion for Civil Contempt (Doc. No. 163)

"Contempt is serious." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017) (citation omitted). "To reflect its seriousness, courts must exercise the contempt sanction with caution and use '[t]he least possible power adequate to the end proposed.'" *Id*. (quoting *United States v. Wilson*, 421 U.S. 309, 319, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975) (further citations omitted)). A party seeking civil contempt sanctions "must demonstrate by clear and convincing evidence that the opposing party knowingly violated a definite and specific order of the court." *Id*. at 800 (quotation marks and citation omitted).

Here, TenPoint admits it violated the parties' protective order. (*See* Doc. No. 169, at 2 ("Regrettably, one TenPoint individual disclosed the designated information beyond the group expressly allowed by the SPO [and] . . . TenPoint is not contesting the SPO's violation or making any excuses therefor.") (emphasis removed).) The R&R recommends that this Court grant Ravin's motion to hold TenPoint in contempt for this violation.

There being no objection to this recommendation, and in light of TenPoint's forthright admission, the Court adopts the recommendation and TenPoint is found in contempt for its violation of the parties' stipulated protective order.

### B. Petition for Attorney's Fees and Costs (Doc. No. 176)

The R&R further recommends that Ravin's petition for attorney's fees and costs be granted in part and that TenPoint be ordered to pay Ravin a total of $39,613.33 in sanctions, including $37,773.41 in attorney's fees and $1,839.92 in costs and expenses.

As noted by the R&R, "'[a] reasonable attorney['s] fee is calculated by the lodestar method[,]' . . . [which] is 'the number of hours reasonably expended on the litigation multiplied by a reasonabl[e] hourly rate.'" (Doc. No. 182, at 10–11 (quoting *the Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (further citations omitted)).)

After careful analysis of the declaration (Doc. No. 176-2, supplemented by Doc. No. 179) submitted by Ravin's lead attorney in support of the legal services performed by that attorney, plus two additional attorneys and a research librarian,[5] finding that the requested hours were "excessive for such a straightforward, largely uncontested issue[,]" (Doc. No. 182, at 13), and that, in light of TenPoint's expert evidence, "downward adjustments to some of Ravin's counsel's billed rates are appropriate[,]" (*id*. at 16), the R&R concluded that "the lodestar is $37,773.41[.]" (*Id*. at 17.) The R&R supplied the following chart to support this calculation and declined to recommend a downward adjustment to the lodestar.

---

[5] The R&R summarized as follows:

> This motion practice was staffed by Kadie Jelenchick, a partner with nearly 18 years' legal practice experience, who charged Ravin for a total of 57 hours; Michelle A. Moran, senior counsel with approximately 14 years of legal practice experience, who charged Ravin for a total of 119.1 hours; Gabriella Salek, an associat[e] with seven months of experience, who charged Ravin for a total of 27.6 [hours]; and Sean Gasser, a research librarian with 25 years of librarian experience, who charged Ravin for a total of 1.0 hours. . . . Ravin seeks to recover Attorney Jelenchick's fees at a rate of $660 per hour; Attorney Moran's fees at a rate of $495 per hour; Attorney Salek's fees at a rate of $364.50 per hour; and Mr. Gasser's fees at a rate of $175 per hour.

(Doc. No. 182, at 12–13, 14.)

|  | Requested Hours | % of Total Hours | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|---|---|
| Jelenchick | 57 | 27.846 | 25.34 | $500 | $12,670 |
| Moran | 119.1 | 58.182 | 52.94 | $425 | $22,499.50 |
| Salek | 27.6 | 13.48 | 12.27 | $208 | $2,552.16 |
| Gasser | 1 | .489 | .45 | $115 | $51.75 |
| Total | 204.7 |  | 91 hours |  | $37,773.41 |

(*Id.* at 17.)

TenPoint raises two objections to the R&R. First, TenPoint argues that the magistrate judge erred by failing to properly apply the rules of evidence. Second, TenPoint argues that the magistrate judge erred by failing to further reduce the award due to lack of economic harm.

### 1. Application of Rules of Evidence in the Context of Civil Sanctions

In TenPoint's view, "[i]f the Evidence Rules were properly applied, the evidence that Ravin presented on its fees and costs would have been excluded . . . , leaving Ravin with no evidence to meet its burden on the requested fees. With no supporting evidence, the requested fees and costs should have been disallowed in their entirety." (Doc. No. 187, at 13–14.)

TenPoint's particular challenge is to the R&R's consideration of Ravin's attorney's declaration (and exhibits) (Doc. No. 176-2–176-4; Doc. No. 179) filed in support of the petition for attorney's fees and costs. TenPoint argues that this declaration was hearsay because Ravin's attorney "refused to take the stand and testify as to their contents subject to cross-examination." (Doc. No. 187, at 8 (citations omitted).) For this proposition, TenPoint relies on Fed. R. Evid. 801 (defining "hearsay") and on *Eli Lilly & Co. v. Arch Ins. Co.*, No. 1:13-cv-1770, 2017 WL 2930571 (S.D. Ind. July 10, 2017), which was a dispute over insurance claims.

*Eli Lilly* is easily distinguished from the instant situation. There, Eli Lilly & Company ("Lilly") had attached two affidavits to its complaint and to its cross motion for partial summary judgment to support its position that certain insurance policies should be reformed due to mutual

9

mistake. Arch Insurance Company ("Arch") unsuccessfully moved to strike the affidavits. Arch then sought to depose the two affiants, both of whom were British citizens employed by a certain British company that had close dealings with Lilly, having been engaged to provide and manage Lilly's various worldwide insurance policies. Initially, Arch was granted leave to depose the two witnesses through the United Kingdom's court system (in accordance with the Hague Convention). Although their British employer objected, it ultimately reached an agreement with Arch as to terms for the depositions. But at the last minute, Arch declined to conduct the depositions because, under British law, cross-examination is not permitted. Instead, Arch sought to compel depositions of the two witnesses in the United States or to strike their affidavits. The district court ruled that it had no personal jurisdiction to compel the depositions and, because the witnesses' affidavits were not subject to cross-examination, the affidavits "constitute[d] inadmissible hearsay that [could not] be considered by the Court *on summary judgment* unless they [fell] under an exception to the rule against hearsay." *Id*. at *7 (emphasis added). The court determined that it must strike the affidavits because there was no way to test their veracity. *Id*.

Here, the Court is not faced with matters going to the merits of the complaint in the underlying case and/or any dispositive motion. Rather, it is confronted by a post-judgment petition—a motion—for attorney's fees to be imposed upon TenPoint as a sanction for its admitted contempt of a protective order. Under Fed. R. Civ. P. 43(c), dealing with evidence on a motion, "[w]hen a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." In addition, under 28 U.S.C. § 1746, an unsworn declaration may be substituted "with like force and effect" so long as it is subscribed by the person making it "under penalty of perjury . . . [as] true and correct." Both Rule 43(c) and § 1746 are satisfied here. (*See* Doc. No. 176-2, at 7; Doc. No. 179, at 3.) TenPoint's

10

argument that the magistrate judge had expressly identified the July 17, 2023 hearing as "an evidentiary hearing" is unavailing. The declarations and their exhibits *are* evidence within the meanings of Rule 43(c) and § 1746. Furthermore, TenPoint raised no hearsay-based evidentiary challenges in its opposition to Ravin's fee petition. (Doc. No. 177.) Therefore, such objections are waived. *See* Fed. R. Evid. 103(a)(1).

The Court overrules TenPoint's objection as to the evidentiary value of the relevant declarations and adopts the R&R's conclusion that "both parties [had been permitted] to submit briefs and [were] provided an opportunity . . . to present any additional evidence." (Doc. No. 182, at 9 (citing *Hill v. Univ. Fid. L.P.*, No. 5:16-cv-2957, 2019 WL 1206884, at *3 (N.D. Ohio Mar. 14, 2019) ("[A] full evidentiary hearing may not be required before the court imposes sanctions, so long as the court provides the party the opportunity to be heard.") (further citation omitted)).)

### 2. Failure to Further Reduce the Award Due to Lack of Economic Harm

TenPoint also objects that the magistrate judge, although "properly reduc[ing] the unreasonable amount of hours and rates sought by Ravin," erred by failing to "further adjust the lodestar" based on Ravin's "ha[ving] suffered *no* actual harm from the disclosure, because it previously provided TenPoint such information . . . with no limitations on internal disclosure and because the external recipients were all under a duty of confidentiality and are not competitors to Ravin so [are] not in a position to use that information to Ravin's detriment." (Doc. No. 187, at 14, 15 (citations omitted; emphasis in original).) TenPoint argues that "Ravin's Motion is analogous to a claim for nominal damages — followed by a bill for thousands upon thousands in attorney['s] fees." (*Id.* at 14.) TenPoint also asserts that it was error for the magistrate judge to conclude that TenPoint wrongfully disclosed the confidential information "for its own advantage." (*Id.* at 15 (citing Doc. No. 182, at 17).)

11

The Court finds that this objection has no merit. During the hearing on July 17, 2023, Ravin's counsel pointed to the Declaration of Kelly Grindle ("Grindle"), CEO and President of Ravin (who was present at the hearing), "detail[ing] the likely harm that has resulted from the dissemination and disclosure of Ravin's confidential information[.]" (Doc. No. 181, at 50 (referring to Doc. No. 163-12 (Declaration).) Grindle attested that he participated in the mediation process and was "very concerned that if TenPoint had access to Ravin's sales information in the form and format that was requested, TenPoint could use that information to TenPoint's advantage and to Ravin's detriment in the crossbow market." (Doc. No. 163-12 ¶ 4; *see also id.* ¶ 5 (explaining more specifically how Ravin's information would advantage TenPoint).) Grindle noted that, even with assurances in place, "[he] had serious reservations about producing Ravin's sales information[.]" (*Id*. ¶ 8.) Additionally, the Court has found TenPoint in contempt due to the disclosed information being designated as Highly Confidential. This was not the case in *Harrell v. CheckAGAIN, LLC*, Civil Action No. 03-0466, 2006 WL 5453652, at *5 (S.D. Miss. July 31, 2006), where the court did not find contempt because the disclosed information had never been identified as "sensitive or confidential[.]"

Furthermore, as properly noted by the magistrate judge, during the hearing, Ravin's counsel noted that "the amount of harm is unknown at this point as it is unclear how far the confidential information travelled once it left TenPoint's hands." (Doc. No. 182, at 18.) Therefore, this case is unlike *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, No. 4:08-cv-465, 2010 WL 2628336, at *4 (E.D. Mo. June 25, 2010), where the court reduced attorney's fees because the plaintiff, after receiving notice from the defendant, took immediate action to ensure that there was no unauthorized disclosure. Additionally, as noted by the magistrate judge, "'harm' includes the

reasonable amount Ravin had to spend pursuing the motion for contempt and the fee petition." (*Id.*)

The Court overrules this objection and adopts the R&R with respect to its lodestar calculation and the decision not to further reduce it.

### IV. Conclusion

For the reasons set forth herein, the Court overrules the objections to the R&R filed by TenPoint and adopts the R&R. Accordingly, the Court (1) grants Ravin's motion (Doc. Nos. 162 and 163) to hold TenPoint in contempt for its violation of the SPO; and (2) orders TenPoint to pay Ravin, as a sanction for TenPoint's contempt, the amount of $39,613.33 (*i.e.*, $37,773.41 in attorney's fees and $1,839.92 in costs and expenses).

The Court further orders that the following be completed within 30 days of this Order: (1) Any person other than TenPoint's outside counsel who is in possession of documents labeled OAEO must destroy those documents; (2) Mr. Bednar must provide a detailed declaration explaining the extent of the disclosed information and share the declaration with Mr. Grindle, Mr. Engstrom, Mr. Lester, and Mr. Schindler; and (3) TenPoint must obtain declarations from third parties with whom the information was shared explaining how the information was further disseminated and what happened to the information, including whether it has been returned or destroyed.

**IT IS SO ORDERED**.

Dated: September 22, 2023

                                                **HONORABLE SARA LIOI**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**